DISCIPLINARY COUNSEL *v.* FOLWELL.

[Cite as *Disciplinary Counsel v. Folwell,* **129 Ohio St.3d 297, 2011-Ohio-3181.**]

*Attorneys — Substantial misconduct — Two-year license suspension with one year stayed on conditions.*

(No. 2010-2251 — Submitted February 16, 2011 — Decided July 6, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-032.

_____

**Per Curiam.**

{¶ 1} Respondent, Norman L. Folwell of Marietta, Ohio, Attorney Registration No. 0056055, was admitted to the practice of law in Ohio in 1991. On September 23, 2010, relator, Disciplinary Counsel, filed a seven-count amended complaint charging respondent with professional misconduct.

{¶ 2} Prior to the disciplinary hearing on October 15, 2010, before a panel of the Board of Commissioners on Grievances and Discipline, the parties stipulated to the entire case — i.e., the facts, mitigating and aggravating factors, and rule violations. Relator dismissed the charges that were not stipulated. The parties also jointly recommended a two-year license suspension with the second year conditionally stayed. The panel adopted the parties' stipulated findings of fact, conclusions of law, and recommended sanction, adding that respondent's practice should be monitored for one year pursuant to Gov.Bar R. V(9)(A) during the stayed suspension.

{¶ 3} Based on the panel's report, the board accepted the panel's findings of fact and conclusions of law and recommends that respondent be suspended from the practice of law for two years, with the second year stayed on

the conditions that he cooperate with a monitor appointed by relator during the stay and commit no further misconduct. We adopt this sanction.

**Misconduct**

{¶ 4} The relator and respondent stipulated to the following facts and misconduct, which the panel and board adopted.

*Count 1 (Ruble/Phelps)*

{¶ 5} Yolanda Ruble and Cash Phelps shared custody of their minor son. Ruble hired respondent to represent her son against Allstate Insurance Company regarding injuries that her son had sustained in a car accident. Respondent had Ruble execute a contingent-fee agreement on her son's behalf, which provided that respondent would receive one-third of any recovery from Allstate. Respondent had not represented a minor in a personal-injury action before and did not know that an attorney for a minor cannot settle a minor's claim without probate court approval.

{¶ 6} In the fall of 2008, respondent settled the case with Allstate for $20,000, and Ruble signed a waiver releasing her son's claim. However, respondent did not include Phelps in negotiating the settlement, nor did he get Phelps's permission to settle his son's claim. The check was payable to respondent and the minor. Respondent visited the minor at a juvenile facility, where he was incarcerated, in order to have him endorse the settlement check. On December 9, 2008, respondent deposited the check in his client trust account and withdrew $6,600 as his fee, leaving $13,400 belonging to the minor.

{¶ 7} Probate Judge Timothy Williams oversaw the juvenile facility in which the minor was being held and learned the next day that the minor had endorsed a settlement check. Judge Williams immediately informed respondent that he could not settle a minor's claim without approval of the probate court and that proceeds from a settlement could not be distributed until the settlement has

2

been approved. Judge Williams told respondent that the forms for approving settlements could be acquired at the clerk's office.

{¶ 8} However, approximately five months later, the minor had turned 18, yet respondent had not filed an application with the probate court to approve the settlement. On April 29, 2009, Judge Williams again advised respondent that he needed to get the court to approve the minor's settlement.

{¶ 9} On July 10, 2009, respondent filed an application with the probate court to approve the settlement. Because the settlement proceeds had been deposited and Ruble had released Allstate from liability months before, Judge Williams reluctantly approved the settlement, ordering the distribution of the $20,000 as follows: $13,659.14 to the minor, $5,340.86 to Medicaid, and $1,000 to respondent for attorney fees. Thus, respondent was required to return $5,600 of the fees that he had collected from the settlement proceeds. On July 31, 2009, respondent disbursed $13,659.14 to the minor from respondent's client trust account.

{¶ 10} Respondent admitted that at least $13,400 of the client's funds in his trust account between December 12, 2009, and July 31, 2009, had belonged to the minor. However, for most months between January 5, 2009, and July 30, 2009, the balance in this account was below $13,400, sometimes by as much as $6,232.34. Thus, respondent used some of the minor's funds for other purposes, including making a payment to another client. Further, from February 1, 2007, to mid-December 2009, respondent neither maintained client ledgers as prescribed by Prof.Cond.R. 1.15(a)(2)(i) through (iv) nor reconciled his client trust account on a monthly basis pursuant to Prof.Cond.R. 1.15(a)(5).

{¶ 11} The parties stipulated that respondent's conduct violated Prof.Cond.R. 1.1 (failing to provide competent representation), 1.3 (failing to act with reasonable diligence and promptness in representing a client), 1.15(a)(2) (failing to maintain separate client ledgers for the funds in a trust account),

1.15(a)(5) (failing to perform and retain a monthly reconciliation of the funds in his trust account), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (engaging in other conduct that adversely reflects on his fitness to practice law).

*Count 2 (Crawford)*

**{¶ 12}** In August 2006, Darrell Crawford, a real estate agent, hired respondent to recover the balance of a commission from real estate broker, Harry Welch. Having been paid $60, on August 6, 2006, respondent sent a demand letter to Welch, but Welch refused to give Crawford any further payment. Consequently, Crawford paid respondent a flat fee of $1,650 to file a lawsuit against Welch. Respondent never filed a complaint, however, and on December 2, 2006, Welch died.

**{¶ 13}** Later that month, Crawford called respondent to discuss how he could recover the balance of the commission. Respondent advised that once Welch's estate was opened, he could file a lawsuit against Welch's estate. In August 2007, Crawford informed respondent that Welch's estate had been opened. Crawford had understood from his discussions with respondent that respondent would be filing a claim against Welch's estate. In July 2008, however, Crawford called the probate court and the county recorder of deeds and learned both that respondent had not filed suit against Welch's estate and that Welch's property had been transferred seven months earlier. Crawford then contacted respondent and asked that his attorney fees be refunded. Two years later, respondent refunded Crawford's attorney fees.

**{¶ 14}** The parties stipulated that respondent's conduct violated Prof.Cond.R.1.3, 1.16(e) (failing to promptly refund any unearned fee upon withdrawal of representation), and 8.4(h).

*Count 3 (Hoover)*

4

**{¶ 15}** On May 28, 2007, respondent consulted with William Hoover about respondent's assisting Hoover in obtaining grandparent visitation. Hoover paid respondent $187 for the consultation and for respondent to send a letter to the attorney for Hoover's daughter. There was no response from Hoover's daughter's attorney.

**{¶ 16}** In November 2007, Hoover asked respondent to file a lawsuit. Respondent told Hoover that he would first need to pay respondent a flat fee of $750. On November 21, 2007, Hoover paid respondent $750.

**{¶ 17}** On November 27, 2007, Hoover left a message with respondent's secretary that respondent should not proceed. After confirming that respondent received the message, Hoover asked respondent to return the $750 fee. Respondent promised to return a portion of the fee, but failed to do so. Over the next several months, Hoover repeatedly asked respondent to refund his fees. Each time, respondent promised a refund, but never followed through. Finally, on July 14, 2010, respondent refunded Hoover $400 in attorney fees.

**{¶ 18}** The parties stipulated that respondent's conduct violated Prof.Cond.R. 1.16(e) and 8.4(h).

*Count 4 (Yates Estate)*

**{¶ 19}** In June 2008, Bessie Yates hired respondent to probate her deceased husband's estate. Respondent charged her $1,200, which was to be paid at the completion of the case. A year passed without respondent's filing the probate case. In June 2009, Yates met with respondent to sign the final paperwork and provide the $300 filing fee.

**{¶ 20}** On July 13, 2009, Yates's son, Phillip, contacted the Washington County Probate Court and verified that no estate had been opened. Two weeks later, respondent finally filed the probate case. Respondent admitted that he could have opened the estate sooner.

**{¶ 21}** The parties stipulated that respondent's conduct violated Prof.Cond.R. 1.3.

*Count 5 (Washington)*

**{¶ 22}** On April 4, 2008, Diana Washington hired respondent to pursue a postdecree matter in Ohio instead of Philadelphia, where the divorce had been granted. Washington paid respondent a $2,500 flat fee to handle the case. Subsequently, respondent informed Washington that he could not help her and told her that he would refund most of her attorney fees. However, as of December 2008, respondent had yet to return any of Washington's attorney fees.

**{¶ 23}** Washington filed a grievance against respondent for failure to return the unearned fees. In December 2008, relator notified respondent that an investigation had begun. On March 5, 2009, respondent returned $840 of his fee to Washington pursuant to a check from his client trust account. On July 14, 2010, respondent refunded the remaining unearned portion of Washington's attorney fees.

**{¶ 24}** The parties stipulated that respondent's conduct violated Prof.Cond.R. 1.16(e) and 8.4(h).

*Count 6 (Martin Estate)*

**{¶ 25}** On January 15, 2009, Thomas Martin hired respondent to transfer title to certain vehicles. Subsequently, Martin hired respondent to handle the probate case for his deceased father's estate. Martin paid a total of $500 for the representation. On February 26, 2009, Martin met with respondent and provided respondent additional information for handling the estate.

**{¶ 26}** In April 2009, respondent reassured Martin that the probate case "was being taken care of." Consequently, Martin believed that the probate case had been filed. In fact, respondent had done nothing on the case since he had met with Martin two months earlier.

**{¶ 27}** In May 2009, while speaking to Martin, respondent realized that Martin believed that respondent had filed the probate case. However, respondent did not correct Martin's impression. In fact, respondent never filed the probate case, and in August 2009, Martin hired new counsel, who filed the probate case within a week. Respondent then refunded $500 to Martin.

**{¶ 28}** The parties stipulated that respondent violated Prof.Cond.R. 1.3, 8.4 (c), and 8.4(h).

### Count 7 (Burdette)

**{¶ 29}** Between 2006 and 2010, Jennifer Burdette was employed as respondent's secretary. She greeted visitors, answered the phone, scheduled respondent's appointments, and typed documents. Burdette was not an attorney.

**{¶ 30}** During Burdette's employment, Oliver Sprouse hired respondent to represent him in a civil matter on a contingent fee. Respondent agreed to pay Burdette ten percent of that fee. After receiving the fee from Sprouse, respondent paid ten percent ($200) to Burdette.

**{¶ 31}** The parties stipulated that respondent violated Prof.Cond.R. 5.4(a) (a lawyer shall not share legal fees with a nonlawyer).

### Sanction

**{¶ 32}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

### Aggravating and Mitigating Factors

**{¶ 33}** The parties stipulated to the following mitigating factors: respondent had no prior disciplinary record, BCGD Proc.Reg. 10(B)(2)(a), and respondent cooperated with the disciplinary proceedings, BCGD Proc.Reg. 10(B)(2)(d). The parties also stipulated to the following aggravating factors: respondent had engaged in a pattern of misconduct, BCGD Proc.Reg. 10(B)(1)(c), and respondent had committed multiple offenses, BCGD Proc.Reg. 10(B)(1)(d). The board also found that the additional aggravating factor of a dishonest or selfish motive was proven by clear and convincing evidence. BCGD Proc.Reg. 10(B)(1)(b).

*Recommended Sanction*

**{¶ 34}** The parties jointly recommended that respondent receive a two-year suspension from the practice of law with the second year stayed on the condition that respondent commit no further misconduct, and the panel added the recommendation that respondent accept a monitor to oversee his practice during the stayed portion of the suspension.

**{¶ 35}** The panel and board found that the jointly recommended sanction was consistent with the sanctions that this court had imposed in *Disciplinary Counsel v. Claflin*, 107 Ohio St.3d 31, 2005-Ohio-5827, 836 N.E.2d 564, and *Cleveland Bar Assn. v. Mishler*, 118 Ohio St.3d 109, 2008-Ohio-1810, 886 N.E.2d 818.

**{¶ 36}** In *Claflin*, the respondent failed to deliver insurance proceeds to his client for more than 32 months while using the funds for expenses and to operate his law office. Id. at ¶ 6. Claflin had no disciplinary record and cooperated with the disciplinary process, but his actions harmed his clients. Id. at ¶ 11, 12. The court noted that disbarment was the presumptive sanction for such misappropriation, but that sanction can be tempered when misconduct is an isolated incident in an otherwise unblemished career and not a course of misconduct. Id. at ¶ 14-15, quoting *Toledo Bar Assn. v. Kramer* (2000), 89 Ohio

St.3d 321, 323, 731 N.E.2d 643. Thus, the court suspended Claflin's license for two years, with one year stayed on the condition that the respondent reimburse the client and pay interest on the funds improperly withheld. Id. at ¶ 16.

{¶ 37} In *Mishler*, the respondent settled cases without his client's consent, obtained settlement proceeds with forged client endorsements, charged excessive fees, and failed to account for client funds. *Cleveland Bar Assn. v. Mishler*, 118 Ohio St.3d 109, 2008-Ohio-1810, 886 N.E.2d 818, ¶ 2. The respondent had no disciplinary record. Id. at ¶ 41. The court imposed a two-year license suspension, with the second year stayed on the conditions that respondent not commit further ethical violations, fully account for and refund client fees with interest, and upon reinstatement, complete a probation period of one year and establish an office accounting system to track receipts and disbursements of his clients' funds. Id. at ¶ 47.

{¶ 38} After reviewing these cases, the panel and board agreed with the parties' recommended sanction of a two-year suspension with the second year stayed on conditions.

{¶ 39} Having reviewed the record, the stipulations, and the board's findings, conclusions, and recommendations, we agree that respondent committed the stipulated misconduct and that the board's recommended sanction is supported by the record.

{¶ 40} Consequently, we suspend respondent's license to practice law for two years, with the second year stayed on the conditions that respondent commit no further misconduct and that he complete one year of probation and be monitored by an attorney appointed by relator in accordance with Gov.Bar R. V(9)(B). If respondent fails to comply with these conditions, the stay will be lifted, and he will serve the full two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

————————————

Jonathan E. Coughlan, Disciplinary Counsel, and Philip A. King, Assistant Disciplinary Counsel, for relator.

Bricker & Eckler, L.L.P., and Alvin Mathews, for respondent.

————————————