**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Corner,* **Slip Opinion No. 2016-Ohio-359.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-359

DISCIPLINARY COUNSEL *v*. CORNER.

COLUMBUS BAR ASSOCIATION *v*. CORNER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Corner,* Slip Opinion No. 2016-Ohio-359.]**

*Attorney misconduct—Violations of the Rules of Professional Conduct, including multiple trust-account violations and failing to act with reasonable diligence in representing a client—Two-year suspension, with second year stayed on conditions.*

(No. 2014-1404—Submitted May 20, 2015—Decided February 3, 2016.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, Nos. 2013-059 and 2014-022.

_____

**Per Curiam**.

{¶ 1} Respondent, Beverly J. Corner of Columbus, Ohio, Attorney Registration No. 0042725, was admitted to the practice of law in Ohio in 1989.

**{¶ 2}** In October 2014, relator disciplinary counsel submitted a three-count complaint to the Board of Commissioners on Grievances and Discipline[1] ("BCGD" or "board") alleging, among other things, that Corner had mishandled and failed to keep required records of the client funds entrusted to her; shared fees with another lawyer without making required disclosures to her client; and engaged in dishonesty, fraud, deceit, or misrepresentation. BCGD case No. 2013-059. On November 14, 2014, a panel of the board found probable cause and directed that the complaint be accepted for filing. Approximately six weeks later, relator Columbus Bar Association ("CBA") submitted a separate complaint, alleging that Corner committed additional trust-account violations and failed to provide competent and diligent representation to a bankruptcy client. BCGD case No. 2014-022. On the joint motion of relators and with Corner's consent, the board consolidated the two cases for hearing in BCGD case No. 2013-059.

**{¶ 3}** The parties stipulated to the facts and many of the alleged violations—although Corner contested the violations alleged in Count Three of disciplinary counsel's complaint—as well as aggravating and mitigating factors. After a hearing, the panel adopted the parties' stipulations and unanimously dismissed several alleged violations. The panel also found that Corner had committed both of the contested violations in Count Three of disciplinary counsel's complaint. Weighing the charged misconduct and the applicable aggravating and mitigating factors and considering the sanctions imposed for comparable misconduct, the panel recommended that Corner be suspended from the practice of law for two years with the second year stayed on conditions. The board adopted the findings of fact, conclusions of law, and recommendation of the panel.

**{¶ 4}** After the board report was filed in this court, we granted disciplinary counsel's motion to remand the matter to the board to address the issue of restitution

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

regarding the violations found by the board in Count Three of his complaint. On remand, the panel issued a supplemental report stating that it had erroneously found that Corner had committed the violations alleged in Count Three of disciplinary counsel's complaint when it should have dismissed them based on the insufficiency of the evidence. The board adopted that supplemental report and submitted it to the court.

{¶ 5} Disciplinary counsel objects and argues that the board exceeded the scope of this court's remand order when it recommended the dismissal of two alleged violations that it previously found Corner to have committed and that he proved by clear and convincing evidence Corner had committed. He also argues that Corner's conduct warrants a two-year actual suspension from the practice of law.

{¶ 6} For the reasons that follow, we overrule disciplinary counsel's objections, adopt the board's findings of fact and misconduct as modified by the board's supplemental report, and suspend Corner from the practice of law for two years with the second year stayed on conditions.

## Misconduct

### CBA Complaint—The Packer Matter

{¶ 7} Corner filed a Chapter 13 bankruptcy petition for Tonya Packer in March 2011. The Chapter 13 trustee objected to confirmation of the bankruptcy plan and outlined numerous deficiencies in the case, including the use of an incorrect social security number. Although Corner corrected the social security number, the trustee noted that other deficiencies had not been addressed, and in July, the court denied confirmation of the plan and dismissed Packer's bankruptcy petition.

{¶ 8} After the bankruptcy court denied Corner's two motions for reconsideration, she filed a second Chapter 13 bankruptcy petition on Packer's behalf. But she did not prepare and tender an order to extend the bankruptcy stay

as directed by the court. Consequently, the stay expired and, in the words of the judge, rendered the bankruptcy "pointless." When the judge confronted Corner about her inaction, she stated that she "forgot" to prepare the order.

{¶ 9} In July 2011, the court ordered Corner to disgorge all fees that she had received in connection with Packer's bankruptcy proceeding, but she did not comply with that order or a second disgorgement order. In November 2011, Corner filed an amended disclosure of compensation stating that she had received no payments from Packer. A January 2011 invoice, however, reflected that she had received three payments totaling $1,800. Following a show-cause hearing, the court granted Packer a judgment of $1,806.65 against Corner. In a separate order, the court suspended Corner's electronic-filing privileges and found that she had failed to adequately represent Packer and that she did "not have sufficient skills to adequately represent debtors."

{¶ 10} The parties stipulated that Corner did not maintain Packer's retainer in her Interest on Lawyers Trust Account ("IOLTA") account and that she is obligated to pay Packer the $1,806.65 specified in the disgorgement order. At the hearing, Corner submitted evidence demonstrating that she remitted payment to Packer in April 2014.

{¶ 11} The parties have stipulated and the board found that Corner's conduct in the Packer matter violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client or a third party is entitled to receive), and 8.4(d) (prohibiting a lawyer from engaging in conduct

that is prejudicial to the administration of justice). We adopt the board's findings of fact and misconduct with respect to the CBA's complaint.

*Office of Disciplinary Counsel ("ODC") Count One—Trust-Account Violations*

{¶ 12} Prior to November 15, 2010, Corner was under the mistaken impression that the bank account in which she held client funds was an IOLTA account. But she did not treat that account as a client trust account; instead, she deposited earned fees into the account, thereby commingling personal and client funds, and used it to pay her personal and business expenses. She opened an IOLTA account on November 15, 2010, but in March 2011, she overdrew that account. As a result of that overdraft, disciplinary counsel initiated an investigation and discovered issues with Corner's management of the account.

{¶ 13} At the conclusion of a seven-month investigation, Corner assured disciplinary counsel that she understood her obligation to maintain her IOLTA account in compliance with the professional conduct rules and agreed that she and her bookkeeper would attend a continuing-legal-education seminar regarding the "nuts and bolts" of IOLTA account management on November 30, 2011. Based on these assurances, disciplinary counsel terminated its investigation on November 29, 2011.

{¶ 14} Despite having attended the seminar on trust-account management, Corner overdrew her IOLTA account twice in July 2012, triggering a second investigation by disciplinary counsel. The parties have stipulated that between January 2012 and May 2013, Corner (1) failed to maintain client ledgers or a general ledger of client funds in her possession, (2) withdrew funds from her IOLTA account on an as-needed basis rather than an as-earned basis, often leaving earned fees in her IOLTA account or causing a shortage of client funds in the account, (3) used funds from her IOLTA account to pay expenses on behalf of clients without first receiving or depositing funds from her clients into the account, and (4) failed to reconcile her IOLTA account on a monthly basis.

**{¶ 15}** The parties have stipulated and the board has found that this conduct violates Prof.Cond.R. 1.15(a), 1.15(a)(2) (requiring a lawyer to maintain a detailed record for each client on whose behalf funds are held), 1.15(a)(3) (requiring a lawyer to maintain a detailed record for the lawyer's client trust account), and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account). We adopt the board's findings of fact and misconduct with respect to this count.

*ODC Count Two—Misappropriation of Client Funds*

**{¶ 16}** The parties entered into detailed stipulations regarding Corner's misappropriation of client funds in her representation of William and Allene McCoy, Shannon Smoot, Donna Denney, Meredith Rogan, Marvin Dennis, Demetra Canon, Alida Powell, and Antonio Sledge. Corner's misconduct in those cases consists largely of (1) depositing some settlement checks and retainers into her business account rather than her IOLTA account, (2) using client funds to pay her personal and business expenses (including payments to or on behalf of other clients), (3) failing to promptly pay client expenses out of settlement proceeds , (4) failing to promptly distribute settlement proceeds to her clients, (5) issuing incorrect settlement statements that resulted in the inflation of her fee, (6) withdrawing client retainers before they were earned, and (7) leaving her earned fees in her IOLTA account and withdrawing them a bit at a time. Corner also stipulated that she failed to obtain the written consent of a client to share her legal fees with another attorney and that she falsely advised a client that she could not promptly distribute settlement funds because her IOLTA account had been compromised and the bank needed to correct the problem.

**{¶ 17}** The parties have stipulated that Corner's conduct violated Prof.Cond R. 1.5(e) (permitting attorneys who are not in the same firm to divide fees only if the fee division is proportional to the work performed, the client consents to the arrangement in writing after full disclosure, and a written closing statement is

6

prepared and signed by the client and each lawyer), 1.15(d), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The board adopted the parties' stipulations of fact and misconduct with respect to this count, and we adopt them as our own.

*ODC Count Three—The Evans Matter*

{¶ 18} Disciplinary counsel charged Corner with violating Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) and 1.15(d) in connection with her representation of Floyd Evans in a personal-injury matter.[2] While the parties submitted stipulated findings of fact with regard to this count, Corner maintained that her conduct did not violate the rules as charged in the complaint.

{¶ 19} The board adopted the parties' stipulated facts, which reflect that Evans was injured in an automobile accident while working as a driving instructor on July 1, 2010. The next day, he retained attorney Michael Gertner to represent him in exchange for a 30 percent contingent fee. Evans later terminated Gertner's representation and signed a 30 percent contingent-fee agreement with Corner. Gertner informed Corner that he was asserting an $11,133.49 lien on Evans's settlement proceeds for his services. Corner disputed the value of Gertner's services but ultimately agreed to pay him $9,333.49 for the services he had rendered to Evans.

{¶ 20} Evans agreed to settle his personal-injury matter for $145,000— $65,000 from his employer and $80,000 from the tortfeasor. Corner deposited a $65,000 settlement check on December 26, 2011. That same day, she distributed $45,500 to Evans and his wife, wrote herself a check for $19,000, and left the remaining $500 in her IOLTA account.

---

[2] Relator also charged Corner with a violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), but the parties agreed to dismiss that alleged violation.

{¶ 21} On February 1, 2013, Corner deposited a $70,666.51 check into her IOLTA. That check represented the tortfeasor's portion of the Evans settlement, less $9,333.49 that Corner had agreed the insurer could pay directly to Gertner for his services.

{¶ 22} When disbursing the remaining settlement proceeds, Corner treated Gertner's attorney fee like any other litigation expense and deducted it from Evans's share of the proceeds rather than from her 30 percent contingent fee. She paid herself $24,000 in attorney fees plus $100 in expenses and paid Evans $14,215.56 because she had erroneously omitted an additional $2,505 medical bill from her settlement-disbursement sheet. All told, Evans paid $52,833.49 in attorney fees to Corner and Gertner out of his $145,000 settlement.

{¶ 23} In their initial reports, the panel and board found that Corner had charged an illegal or clearly excessive fee and that she had failed to promptly deliver funds or other property that a client or third party was entitled to receive in violation of Prof.Cond.R. 1.5(a) and 1.15(d). But after we remanded the matter to the board to address the issue of restitution, the panel and board issued a supplemental report stating that the alleged violations in this count should have been dismissed due to the insufficiency of the evidence.

## Discussion

### *The Board Did Not Exceed the Scope of Our Remand*

{¶ 24} In his first objection, disciplinary counsel argues that the board exceeded the scope of our remand by recommending that we dismiss the alleged violations of Prof.Cond.R. 1.5(a) and 1.15(d) instead of recommending the amount that Corner should be ordered to pay Evans in restitution. He argues that the board should not have revised its previous recommendation, because the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.

**{¶ 25}** We acknowledge that the law-of-the-case doctrine plays an important role in our jurisprudence, imparting finality and consistency of result to the rule of law. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). But there was no law of the case in this matter when we remanded it to the board because the board's report was a nonbinding recommendation and we had yet to decide any of the issues presented. *See* Gov.Bar R. V(2)(B)(1) (granting the board the authority to receive evidence, preserve the record, make findings, and submit recommendations to this court concerning complaints of misconduct that are alleged to have been committed by a judicial officer or an attorney); *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193, paragraph one of the syllabus (1999) (holding that in disciplinary cases, the Supreme Court renders the final determination of the facts and conclusions of law and is not bound by the findings of the board).

**{¶ 26}** Thus, to the extent that the board may have exceeded the scope of our remand by correcting what it determined to be erroneous findings of misconduct, it answered our question by stating that in its view, there was no misconduct in the Evans matter and the issue of restitution was moot. Therefore, we find no fault with the board's actions in this case and overrule disciplinary counsel's first objection.

*Insufficient Evidence Was Presented to Establish that*

*Corner Charged a Clearly Excessive Fee*

**{¶ 27}** In his second objection, disciplinary counsel contends that Corner charged a clearly excessive fee because she deducted the fees paid to Evans's former attorney from Evans's share of the settlement proceeds, while she collected the full 30 percent contingent fee set forth in her own fee contract. Disciplinary counsel concedes that the total attorney fees that Evans paid—$52,833.49 or 36.4 percent of his $145,000 settlement—is not, in and of itself, clearly excessive. But he contends that when viewed against the two contingent-fee agreements, in which

Evans agreed to pay just 30 percent of any settlement to his respective attorney, this 36.4 percent fee is clearly excessive. In support of this argument, disciplinary counsel relies on the following holding of the Indiana Supreme Court: " '[O]nly one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed [and] * * * that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question.' " (Brackets and ellipsis sic.) *Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 863 (Ind.1999), quoting *Saucier v. Hayes Dairy Prods., Inc.*, 373 So.2d 102, 118 (La.1979).

{¶ 28} *Galanis* established a default rule that in the state of Indiana, clients who enter into contingent-fee agreements with successive attorneys should pay only one contingent fee and that that fee should be "apportioned according to the respective services and contributions of the lawyers based on the work each performed." *Id.* at 863. But the Indiana Supreme Court clearly stated that that rule should apply only "in the absence of express written fee arrangements providing otherwise," and it anticipated that the vast majority of such fee arrangements would be resolved by agreement between the client and the affected lawyers. *Id.* at 858, 864. Here, we have such a writing.

{¶ 29} Shortly after Evans retained Corner to handle his personal-injury matter, she wrote to Gertner to request the file and offer to protect his attorney fees. Gertner claimed to have an $11,133.49 lien on any settlement obtained in the case, but when Evans disputed that amount, Corner negotiated the bill down to $9,333.49, and she testified that Evans agreed to pay that amount. Although it does not appear that their agreement was immediately reduced to writing, Evans signed the settlement-disbursement sheet, which plainly reflected the payment of Corner's 30 percent contingent fee, plus other expenses, including Evans's medical expenses and Gertner's attorney fees of $9,333.49. This undisputed writing, signed by

Evans—who did not testify at the hearing—reflects that he agreed to pay Gertner's fee out of his share of the settlement proceeds. Thus, it is not necessary for us to adopt the default rule advanced by disciplinary counsel to resolve this case.

{¶ 30} Based on the evidence before us, and having considered the factors set forth in Prof.Cond.R. 1.5(a)[3] for determining the reasonableness of an attorney fee, we cannot find that an attorney of ordinary prudence would be left with a definite and firm conviction that the fees Evans agreed to pay—$52,833.49 or 36.4 percent of his $145,000 personal-injury settlement—are in excess of a reasonable fee. *See* Prof.Cond.R. 1.5(a) ("[a] fee is clearly excessive, when after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee" [emphasis deleted]). We therefore overrule disciplinary counsel's second objection and dismiss the alleged violation of Prof.Cond.R. 1.5(a).

*Corner's Distribution in the Evans Matter Did Not Violate Prof.Cond.R. 1.15(d)*

{¶ 31} In his third objection, disciplinary counsel argues that he has proven by clear and convincing evidence that Corner violated Prof.Cond.R. 1.15(d) by tendering to Grant Medical Center a check for $2,505 less than it was owed for Evans's medical treatment. The undisputed evidence shows that Corner took that

---

[3] The eight factors to be considered in determining the reasonableness of a fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

Prof.Cond.R. 1.5(a).

action upon discovering that she had mistakenly omitted another $2,505 medical bill from the settlement-disbursement sheet and had consequently distributed an extra $2,505 to Evans in error. Although Corner sent Evans a letter informing him that it was his responsibility to make an additional $2,505 payment to Grant Medical Center as a result of her error, the hospital ultimately accepted the reduced payment as complete satisfaction of the debt.

**{¶ 32}** While we do not condone Corner's lax accounting procedures, we find that the net effect of her actions, coupled with those of the hospital, was to settle her client's liability for less than he owed, leaving him in possession of an additional $2,505. Based on the unique facts of this case and the evidence before us, we cannot find that Corner's error and subsequent actions to correct it violated the rules of professional conduct. Therefore, we overrule disciplinary counsel's third objection and dismiss Count Three of his complaint in its entirety.

## Sanction

**{¶ 33}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[4] *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 34}** As aggravating factors, the parties have stipulated and the board found that Corner engaged in a pattern of misconduct that involved multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(c) and (d).

**{¶ 35}** In mitigation, the board adopted the parties' stipulations that Corner has no prior disciplinary record and has cooperated with the investigations

---

[4] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

conducted by disciplinary counsel and the Columbus Bar Association. *See* BCGD Proc.Reg. 10(B)(2)(a) and (d). The panel also heard testimony from Jason Coale, a licensed independent social worker who diagnosed and began treating Corner for a depressive disorder in July 2013. Based on information Coale obtained from Corner during her treatment, he testified that her depression reached deep into her past and that it contributed to her misconduct. He reported that her condition was improving with treatment, and he opined that with ongoing treatment and systems in place to keep her current with her ethical obligations, she is able to return to the competent, ethical, and professional practice of law. Although the board expressed some reservations about Coale's credibility, it nonetheless found that Corner's mental disability qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g). And we find that on July 17, 2013, Corner entered into a four-year mental-health contract with the Ohio Lawyers Assistance Program, Inc. ("OLAP"), requiring her to continue her individual counseling and follow up with certain medical professionals.

{¶ 36} In determining the appropriate sanction for Corner's misconduct, the board found that we imposed two-year suspensions, with the second year stayed on conditions, for comparable misconduct in *Disciplinary Counsel v. Talikka*, 135 Ohio St.3d 323, 2013-Ohio-1012, 986 N.E.2d 954, and *Disciplinary Counsel v. Folwell*, 129 Ohio St.3d 297, 2011-Ohio-3181, 951 N.E.2d 775.

{¶ 37} Talikka, an attorney with more than 40 years of experience, failed to act with reasonable diligence in three separate client matters, failed to inform two clients that their cases had been dismissed, failed to refund the unearned portion of his retainers, failed to properly administer client funds that he should have held in trust, and failed to maintain records regarding the funds that were required to be held in a client trust account. *Talikka* at ¶ 6-7. He also failed to have three personal-injury clients sign closing statements detailing the distribution of their settlement proceeds, failed to promptly distribute all of the funds that his clients were entitled

to receive, and stipulated that he had engaged in dishonesty, fraud, deceit, or misrepresentation in five client matters. *Id.* at ¶ 8, 9.

{¶ 38} Similarly, Folwell, an attorney with 20 years of experience, engaged in a pattern of misconduct involving seven separate client matters in which he failed to provide competent representation, failed to act with reasonable diligence, failed to maintain required records for his client trust account, improperly used client funds for his own purposes, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. *Folwell* at ¶ 5-31. He also accepted retainers from clients and failed to perform their work, unreasonably delayed performing work, led a client to believe that his case had been filed when it had not, and made empty promises to refund the unearned portions of his fees. *Id.* at ¶ 13, 15-28.

{¶ 39} Having considered Corner's conduct and the applicable aggravating and mitigating factors, the board found that the sanction imposed in *Talikka* and *Folwell* was appropriate here. Therefore, the board recommended that Corner be suspended from the practice of law for two years with the second year stayed. The board further recommended that Corner's reinstatement be conditioned on her continued treatment for her depression, compliance with her OLAP contract, and her submission of documentation from OLAP or a qualified medical professional stating that she is competent to return to the practice of law.

{¶ 40} Disciplinary counsel objects to the recommended sanction, arguing that it is too lenient given Corner's misconduct and her propensity to place her own interests above those of her clients. He attempts to distinguish the sanctions imposed in *Talikka* and *Folwell* on the ground that they were stipulated sanctions, while the sanction in this case is contested. Disciplinary counsel notes that three members of this court believed that Talikka's misconduct warranted an indefinite suspension from the practice of law. *See Talikka* at ¶ 101 (O'Connor, C.J., joined by Lanzinger and French, JJ., dissenting). Moreover, disciplinary counsel contends that while Talikka practiced for more than 40 years without incident, Corner

continued to engage in the misconduct here during an earlier disciplinary investigation that did not result in disciplinary charges against her. But Corner also practiced law without incident for more than 20 years before disciplinary counsel initiated its first investigation into her misconduct—an investigation that was dismissed without any formal charges being filed. And Talikka stipulated that he owed nearly $49,000 in restitution to three clients, *Talikka* at ¶ 15—more than two and a half times the amount that Corner is claimed to have misappropriated.

**{¶ 41}** Disciplinary counsel notes that in *Disciplinary Counsel v. Leksan*, 136 Ohio St.3d 85, 2013-Ohio-2415, 990 N.E.2d 591, ¶ 29, 33, 35, his predecessor recommended a two-year actual suspension for misconduct that included dishonesty, fraud, deceit, or misrepresentation; the improper handling of client funds; the failure to maintain adequate records of client funds in his possession; and the misappropriation of client funds for personal and business expenses. Although we acknowledged multiple mitigating factors in that case—including Leksan's cooperation in the disciplinary process; his diagnosed depression, alcohol, and gambling addictions that were causally related to his conduct; his aggressive treatment for those conditions; and his voluntary restoration of most of the misappropriated funds before his misconduct was discovered—we indefinitely suspended Leksan on the board's recommendation. *Id.* at ¶ 26-35.

**{¶ 42}** Recognizing that Corner misappropriated far less than Leksan, but arguing that her conduct is more egregious than that of both Talikka and Folwell, disciplinary counsel urges us to impose a two-year actual suspension from the practice of law in this case. We do not find disciplinary counsel's arguments to be persuasive.

**{¶ 43}** Balancing all the relevant factors, we find the sanction imposed in *Talikka* and *Folwell* to be most instructive. Given Corner's cooperation in the disciplinary process, her mitigating mental-health diagnosis, her ongoing mental-health treatment, and her four-year OLAP contract, we believe that the board's

recommended sanction is appropriate in this case. Therefore, we overrule disciplinary counsel's fourth objection and adopt the findings of fact, conclusions of law, and recommendation of the board.

**{¶ 44}** Accordingly, Beverly J. Corner is suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that she engage in no further misconduct, continue to participate in appropriate mental-health treatment with a licensed professional, and remain in full compliance with her July 17, 2013 OLAP contract. If Corner fails to comply with these conditions, the stay will be lifted and she will serve the full two-year suspension. Upon applying for reinstatement, Corner shall be required to submit documentation from a qualified mental-health professional to demonstrate that she is capable of returning to the competent, ethical, and professional practice of law. Costs are taxed to Corner.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., dissents and would indefinitely suspend the respondent.

_____

Scott J. Drexel, Disciplinary Counsel, and Karen H. Osmond and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator Disciplinary Counsel.

Judith McInturff, Robert J. Morje, Lori J. Brown, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator Columbus Bar Association.

James E. Arnold & Associates, L.P.A., and Alvin E. Matthews Jr., for respondent.

_____