**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Horton,* **Slip Opinion No. 2018-Ohio-2390.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2390

CLEVELAND METROPOLITAN BAR ASSOCIATION *v*. HORTON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Horton,* Slip Opinion No. 2018-Ohio-2390.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension, with one year conditionally stayed.*

(No. 2017-1416—Submitted December 6, 2017—Decided June 26, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-011.

_____

**Per Curiam.**

{¶ 1} Respondent, Debbie Kay Horton, of Solon, Ohio, Attorney Registration No. 0033622, was admitted to the practice of law in Ohio in 1986.  On February 24, 2010, we suspended her for two years, with the second year stayed on conditions, for settling clients' personal-injury claims and endorsing the settlement checks without the clients' authority and converting the settlement proceeds to her

own use. *Disciplinary Counsel v. Horton*, 124 Ohio St.3d 434, 2010-Ohio-579, 923 N.E.2d 141. We reinstated her license to practice law on May 11, 2011. *Disciplinary Counsel v. Horton*, 128 Ohio St.3d 1225, 2011-Ohio-2386, 947 N.E.2d 174.

{¶ 2} In a March 2, 2017 complaint, relator, Cleveland Metropolitan Bar Association, alleged that Horton committed 17 violations of the professional-conduct rules while pursuing personal-injury claims on behalf of a woman and her minor daughter. Among other things, relator alleged that Horton failed to make required disclosures to her client, to obtain the client's written consent to or acknowledgment of certain circumstances affecting the representation, to formally withdraw from the case following a disagreement with the client, to promptly deliver funds that the client was entitled to receive, and to maintain required records regarding her client trust account.

{¶ 3} The parties submitted joint stipulations of fact and aggravating and mitigating factors, and Horton admitted to some of the charged misconduct. The parties jointly recommended that Horton be suspended from the practice of law for one year, with six months stayed on conditions.

{¶ 4} The matter proceeded to a hearing before a panel of the Board of Professional Conduct. The panel found that Horton committed nine of the ten rule violations she admitted to committing, and it unanimously dismissed the remaining allegations. The panel recommended that she be suspended for two years, with one year stayed on the condition that she engage in no further misconduct, and further recommended that her reinstatement be subject to additional conditions. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, and no objections have been filed.

{¶ 5} Having independently reviewed the record, we adopt the board's report and recommendation and suspend Horton from the practice of law for two years, with one year conditionally stayed.

**Misconduct**

{¶ 6} On April 13, 2012, Raquel Green retained Horton to represent herself and her minor daughter in a personal-injury case arising from an automobile collision. Green signed Horton's standard contingent-fee agreement, which provided for a fee of 33.3 percent of the amount recovered if settlement occurred before suit was filed and 40 percent of the recovery if a lawsuit was filed. Horton stipulated that she did not countersign that contract—or any of her fee contracts— as required by Prof.Cond.R. 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer).

{¶ 7} Horton also failed to make and properly document other required disclosures. She did not inform Green that she did not carry professional-liability insurance or have her sign a written acknowledgment of that fact, as required by Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance and to obtain a signed acknowledgment of that notice from the client). And although Horton orally informed Green that she intended to engage another attorney to serve as co-counsel, the terms of that relationship were never reduced to a writing that was signed by Green and the other attorney, as required by Prof.Cond.R. 1.5(e)(2) (prohibiting certain fee divisions unless the lawyers have made certain factual disclosures to the client and received the client's written consent). Moreover, Horton admitted that she did not make these required disclosures to any of her other clients.

{¶ 8} Horton filed a lawsuit on behalf of Green and Green's daughter on April 4, 2014. She voluntarily dismissed that suit in January 2015 and refiled it the next month. At the final pretrial conference in January 2016, Green agreed to settle her daughter's claim for the tortfeasor's policy limits of $100,000 and to settle her own claim for $25,000.

{¶ 9} Because Green's daughter was a minor, Horton filed an application for probate-court approval of the settlement. According to Horton, the magistrate

at the probate hearing indicated that attorney fees for a minor's claim were limited to one-third of the settlement. However, in approving the settlement, the magistrate also awarded Green $7,000 from her daughter's settlement for "loss of service," which according to Horton, was intended for Green to use to pay the remainder of Horton's contracted fee.

{¶ 10} When Horton and Green met at the Warrensville Public Library to sign the settlement checks in April 2016, they had a disagreement about Horton's fees and a $5,500 discount that she had offered to Green. As a result of their verbal altercation, a Warrensville police officer ordered the two women to have no contact with each other. Horton testified that she felt compelled to obey that order even though it had not been issued by a court. Although she ceased contact with Green, she failed to file a written motion for leave to withdraw from the representation as required by the local court rules. She also failed to appear at a May 19, 2016 hearing on defense counsel's motion to enforce the settlement. Horton stipulated that her failure to formally withdraw from the case violated Prof.Cond.R. 1.16(c) (prohibiting a lawyer from withdrawing from representation in a proceeding without leave of court if the rules of the tribunal so require).

{¶ 11} In a May 2016 grievance, Green claimed that she had not received the $7,000 awarded to her by the probate court. Horton told relator that she had sent Green a letter with a $7,000 check on April 19, 2016, but Green reported to relator that she had not received it. Horton waited until approximately five months after the grievance was filed before she issued a new check to Green and stopped payment on the original check. Horton admitted that her conduct violated Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive).

{¶ 12} Horton also stipulated that she failed to maintain proper records to document the funds held in her client trust account, and she testified that she used that account to pay at least one personal expense. She admitted that her conduct

4

violated Prof.Cond.R. 1.15(a)(2) through (5) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property; to maintain a record for each client on whose behalf funds are held setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account; and to perform and retain a monthly reconciliation of the lawyer's client trust account).

{¶ 13} Based on this evidence, the panel found that Horton's conduct violated Prof.Cond.R. 1.4(c), 1.5(c)(1), 1.5(e)(2), 1.15(a)(2) through (5), 1.15(d), and 1.16(c).[1] But the panel rejected the parties' stipulation that Horton violated Prof.Cond.R. 1.15(a)(1) (requiring a lawyer to maintain a copy of any fee agreement with each client) and unanimously dismissed that allegation, four allegations that relator had agreed to dismiss, and three others in support of which relator had presented no evidence.

{¶ 14} The board adopted the panel's findings of fact and misconduct, and we adopt those findings as our own.

### Sanction

{¶ 15} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

{¶ 16} As aggravating factors, the parties stipulated and the board found that Horton has a prior disciplinary record, engaged in a pattern of misconduct, and violated multiple professional-conduct rules. *See* Gov.Bar R. V(13)(B)(1), (3), and (4). Notably, as evidence of a pattern of misconduct, both the parties and the board

---

[1] Although the complaint charged Horton with a violation of Prof.Cond.R. 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest), the parties stipulated and the board found that her conduct actually violated Prof.Cond.R. 1.16(c).

cited not only Horton's failure to sign her fee agreements with and make required disclosures to Green and other clients but also Horton's failure to correct her client-trust-account management practices following relator's dismissal of a 2015 overdraft investigation.

{¶ 17} In mitigation, the board found that Horton demonstrated a cooperative attitude toward the disciplinary proceeding. *See* Gov.Bar R. V(13)(C)(4). Specifically, Horton was forthright and honest in discussing her past and current mismanagement of her client trust account, waived confidentiality with regard to relator's 2015 disciplinary investigation, and readily admitted to her rule violations. The board noted that Horton had demonstrated a willingness to make necessary changes to her practice going forward but that her conduct since her 2010 suspension demonstrates that she has difficulty understanding or implementing acceptable law-office practices and complying with the applicable professional-conduct rules regarding those matters.

{¶ 18} The board recommends that we suspend Horton for two years, with one year stayed on the condition that she engage in no further misconduct. It also recommends that as a condition of reinstatement, she be required to submit proof that she has completed 12 hours of continuing legal education ("CLE") addressing law-office management—with three of those 12 hours focused on client-trust-account-related instruction—in addition to the CLE requirements of Gov.Bar R. X. The board recommends that upon reinstatement, Horton be required for one year to work with a practice monitor, approved by relator, who will serve as Horton's mentor with regard to law-office management.

{¶ 19} In reaching its recommendation, the board considered several cases in which we disciplined attorneys for comparable misconduct.

{¶ 20} In *Toledo Bar Assn. v. Royer*, 133 Ohio St.3d 545, 2012-Ohio-5147, 979 N.E.2d 329, the attorney failed to deposit one client's funds into his client trust account, failed to maintain required client-trust-account records, lost evidence that

was vital to the client's claim, and neglected three legal matters involving another client. Although Royer had committed multiple offenses that affected vulnerable clients, he had no prior discipline during his 46 years of practice, had not had a dishonest motive, had made restitution to his clients, had fully cooperated in the disciplinary process, and had shown remorse. Therefore, we suspended him for one year, fully stayed on the conditions that he serve a two-year period of monitored probation without additional violations of the professional-conduct rules, retain a certified public accountant to review his bookkeeping procedures, and establish his compliance with Prof.Cond.R. 1.15 within six months of our order.

{¶ 21} In *Akron Bar Assn. v. Tomer*, 138 Ohio St.3d 302, 2013-Ohio-5494, 6 N.E.3d 1133, the attorney failed to file motions on behalf of a client, failed to secure signed notices from clients regarding her lack of professional-liability insurance, failed to refund unearned fees, failed to maintain required records regarding her client trust account, and submitted fabricated and backdated letters to the relator during a disciplinary investigation. We recognized that Tomer had committed multiple offenses and had engaged in dishonest conduct during the disciplinary investigation, but we also acknowledged that she had no prior discipline, had lacked adequate training when she entered private practice after 16 years of "exemplary service" as an assistant prosecutor, had presented evidence of her excellent character and reputation, and had shown significant remorse. Consequently, we suspended Tomer for two years, all stayed on the conditions that she complete a two-year period of monitored probation, complete 12 hours of CLE focused on law-office management, and engage in no further misconduct.

{¶ 22} And in *Disciplinary Counsel v. Corner*, 145 Ohio St.3d 192, 2016-Ohio-359, 47 N.E.3d 847, we imposed a two-year suspension, with the second year stayed on conditions, for misconduct that included several overdrafts of the attorney's client trust account, misuse of that account for personal expenses, commingling of personal and client funds, misappropriation, and failure to maintain

required client-trust-account records. Corner also failed to provide competent representation to a client in a bankruptcy proceeding and engaged in conduct prejudicial to the administration of justice by failing to comply with two disgorgement orders issued by the bankruptcy court. Mitigating factors included the absence of a prior disciplinary record and a mental-health diagnosis that contributed to Corner's misconduct.

{¶ 23} We find that Horton's misconduct is comparable to that of Royer and Tomer, though perhaps not as egregious as that of Corner, whose misconduct extended well beyond the sloppy office practices exhibited here. We agree, however, with the board's assessment that Horton's prior disciplinary record and her failure to make agreed changes to her client-trust-account management practices following relator's 2015 overdraft investigation weigh in favor of a sanction more severe than the one we imposed on Royer and Tomer, and comparable to that which we imposed on Corner.

{¶ 24} Accordingly, Debbie Kay Horton is suspended from the practice of law in Ohio for two years, with one year stayed on the condition that she engage in no further misconduct. As a condition of reinstatement, Horton shall submit proof that she has completed 12 hours of CLE addressing law-office management, with three of those hours focused on client-trust-account-related instruction; those hours shall be in addition to the CLE requirements of Gov.Bar R. X. Upon reinstatement, Horton shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21). If Horton fails to comply with the condition of the stay, the stay will be lifted and she will serve the full two-year suspension. Costs are taxed to Horton.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

DEGENARO, J., not participating.

_____

Tucker Ellis, L.L.P., Seth H. Wamelink, and Jon W. Oebker; and Heather M. Zirke, Bar Counsel, and Kari L. Burns, Assistant Bar Counsel, for relator.

Debbie Kay Horton, pro se.

_____