[Cite as *CIG Toledo, L.L.C. v. NZR Retail of Toledo, Inc.*, 2019-Ohio-160.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

CIG Toledo LLC

    Appellee

v.

NZR Retail of Toledo, Inc., et al.

    Appellant

Court of Appeals No. L-17-1282

Trial Court No. CI0201603616

**DECISION AND JUDGMENT**

Decided:  January 18, 2019

* * * * *

Jonathan M. Hanna, for appellee.

Alan Kirshner, for appellants.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted appellee's motion for reasonable attorney's fees.  For the reasons set forth below, this court affirms, in part, and reverses, in part, the judgment of the trial court.

{¶ 2} On July 26, 2016, plaintiff-appellee CIG Toledo, LLC filed a landlord's complaint for eviction, breach of the lease, breach of guaranties, and unjust enrichment

against its tenant, defendant-appellant NZR Retail of Toledo, Inc., and co-defendants Naqid Hasan, Yazeed Qaimari and Mona Qaimari. Appellee alleged appellant breached various renovation and financial obligations under a 20.33-year commercial lease of real property located in Toledo, Lucas County, Ohio. Appellee alleged the lease required appellant to "pay all of Plaintiff's costs and expenses, including reasonable attorneys' fees, incurred by Plaintiff in enforcing the Lease." The relief appellee sought was immediate possession of the premises and damages "in excess of $25,000.00, exclusive of interest, penalties, attorneys' fees and legal expenses" now and in the future.

{¶ 3} Following a period of pleadings involving various answers and counterclaims among the parties and the addition of Hemant Chhajwani, appellee's manager, as an "additional counterclaim defendant," the parties reported to the trial court they reached a settlement, and a settlement hearing was held on September 21, 2016. The trial court stated in its judgment entry journalized on September 28, 2016, in part:

> Matter proceeded on the record where the parties represented to the court that their differences have been resolved. Remaining between the parties is the sole issue of attorney fees. The attorneys further represented they are working toward resolution of this matter. Accordingly, this case is dismissed without prejudice, with the court retaining jurisdiction to enforce the settlement agreement reached between the parties * * *.

{¶ 4} Then on May 15, 2017, appellee moved the trial court for an order to enforce the settlement agreement and an order for $21,921.13 plus ongoing attorney's fees and

2.

expenses. Appellee argued appellant and the co-defendants acknowledged their liability for appellee's attorney's fees and expenses "incurred in administering and enforcing the subject lease, as expressly provided by the lease." Appellee further argued the complaints and counterclaims were all dismissed on the agreement by the parties to "discuss the amount of such costs post-dismissal." Appellee conceded the reason for the post-dismissal negotiation was because at the time of the September 21, 2016 settlement hearing, appellant and the co-defendants had not yet received for review any of appellee's attorney invoices. Appellee argued now they have and refuse to pay in full.

{¶ 5} Appellee supported its claim for $21,921.13 in attorney's fees and expenses with an affidavit by Mr. Chhajwani, "an authorized member and manager" of appellee, averring from personal knowledge that, among other matters, retaining Mr. Hanna since May 2015 was necessary to ensure appellant "submitted the required documentation to support its payment requests and that other Lease requirements were being observed." Mr. Chhajwani further averred "much of the fees and expenses incurred by Plaintiff in this matter were the direct result of" appellant's actions and that Mr. Hanna "has provided highly competent and cost-effective representation in this matter." Appellee also supported its claim for $21,921.13 in attorney's fees and expenses with an affidavit by an expert witness attorney whose opinion was Mr. Hanna's attorney's fees were reasonable.

{¶ 6} Appellant opposed appellee's motion, arguing the commercial lease provision for unilateral fee shifting relied upon by appellee, paragraph 4, was void and

3.

unenforceable.  Appellant further argued fee shifting was not specifically negotiated.

Finally, appellant argued appellee's fees were unenforceable because they were "grossly

excessive."  On October 5, 2017, appellee filed a supplemental affidavit by Mr.

Chhajwani averring, among other matters, that Mr. Hanna's attorney's fees and expenses

to date were now $26,142.13.

{¶ 7} The trial court held a motion hearing on October 5, 2017.  The trial court

stated in its judgment entry journalized on October 10, 2017, in part:

> Upon review, the Court notes that the parties previously represented
>
> the matter as settled, with the exception of the dispute over attorney fees
>
> owed pursuant to the lease.  Accordingly, it is clear that plaintiff does not
>
> seek to enforce the settlement, but is instead proceeding for the Court's
>
> determination of a reasonable award of attorney fees.  The Court, therefore,
>
> deems the present Motion to Enforce Settlement as a Motion for Attorney
>
> Fees.

{¶ 8} Then as journalized on October 20, 2017, the trial court issued its order on

appellee's motion in which it made a number of findings, including:

> It is clear from the record that Defendants acknowledged that
>
> Plaintiff is entitled to fees in connection with enforcement of the Lease, and
>
> filing the eviction proceedings constituted enforcement of the Lease [under
>
> paragraph 31]. * * * Accordingly, all that remains for determination is the
>
> reasonableness of the fee award sought. * * * It is clear that the provisions

4.

in the parties' agreements [the commercial lease and personal guaranties] limit an award of reasonable fees to actions taken to enforce the Lease. * * * Upon due consideration of the Motion of Plaintiff, the Opposition filed by Defendants, the argument of counsel, the record, and applicable law, the Court finds that an award of attorney fees is proper based on the enforceable terms within the Lease and Guaranties. Having carefully reviewed the invoices and affidavits, and consistent with the terms of the Lease and Guaranties, the Court finds the amount of $16,866.00 to be the reasonable and appropriate award of attorneys' fees and costs, expended in enforcing the parties' Lease and Guaranties, as itemized in the Court's exhibit attached to this entry.

{¶ 9} The trial court's exhibit attached to its order stated the following:

| | Date | Invoice # | Firm | Amount |
|---|---|---|---|---|
| 1 | June 11, 2015 | 1536 | Semro, Henry & Spinazze Ltd. | $2,575.00 |
| 2 | July 2, 2015 | 1600 | Semro, Henry & Spinazze Ltd. | $569.25 |
| 3 | August 28, 2015 | 1729 | Semro, Henry & Spinazze Ltd. | $2,121.75 |
| 4 | March 17, 2016 | 2027 | Brenda A. Ray Law Offices, Ltd. | $925.00 |
| 5 | April 1, 2016 | 4347 | Brenda A. Ray Law Offices, Ltd. | $525.00 |
| 6 | May 25, 2016 | None | Hanna & Hanna | $975.00 |
| 7 | June 16, 2016 | None | Hanna & Hanna | $1,250.00 |
| 8 | July 28, 2016 | None | Hanna & Hanna | $3,975.00 |
| 9 | August 31, 2016 | None | Hanna & Hanna | $2,200.00 |
| 10 | September 30, 2016 | None | Hanna & Hanna | $1,750.00 |
| | | | TOTAL | $16,866.00 |

5.

{¶ 10} None of the three co-defendant guarantors appealed the trial court's order. Appellant filed this appeal setting forth two assignments of error:

I. The contract limited the award of attorney fees to those necessary to enforce the lease. The trial court erred in awarding attorney fees beyond the scope of those called for in the contract.

II. The trial court abused its discretion by awarding $500.00 for delivering the complaint to the clerk.

{¶ 11} Both of appellant's assignments of error allege the trial court abused its discretion in different ways when it determined the amount of reasonable attorney's fees appellant must pay appellee. We will address them together.

{¶ 12} In support of both assignments of error, appellant argued the trial court abused its discretion when it awarded appellee attorney's fees in the amount of $16,866 for a number of reasons. First, de novo review of the commercial lease showed appellee was entitled only to attorney's fees pertaining to the eviction proceedings. Second, only three of appellee's ten invoices relied on by the trial court pertained to the eviction proceedings, for a total of $6,525. The record shows appellant conceded appellee's enforcement action-related attorney's fees expenses began on July 21, 2016, with the conference with the client about eviction and related remedies and ended at the September 21, 2016 hearing where settlement was reached. Third, the entry on July 26, 2016, for $500 was unreasonable, leaving only $6,025 as the reasonable attorney's fees in this matter.

6.

{¶ 13} In response, appellee argued the trial court did not abuse its discretion because the lease "is clear and unambiguous on its face" and the parties intended for appellee to recover two types of attorney's fees under the lease: (1) pursuant to paragraph 4, all attorney's fees under "a pure net lease," in which appellant agreed to pay all of appellee's expenses during the term of the commercial lease "related to" the property and the lease, and (2) pursuant to paragraph 31, all "reasonable" attorney's fees if appellee prevailed in an enforcement action. Appellee further argued "the $500 time entry on July 26, 2016" for delivering the complaint to the court clerk was found reasonable by both appellant's expert and the trial court.

{¶ 14} We review a trial court's decision to award attorney's fees and the amount thereof for an abuse of discretion. *Savoy Hosp., LLC v. 5839 Monroe St. Assocs. LLC*, 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 68. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 15} One exception to the American Rule, where each party involved in litigation pays its own attorney fees, is if the parties contracted to shift the payment of attorney's fees. *Savoy* at ¶ 69.

{¶ 16} "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in

7.

excess of a *reasonable* fee." (Emphasis sic.) *Disciplinary Counsel v. Corner*, 145 Ohio St.3d 192, 2016-Ohio-359, 47 N.E.3d 847, ¶ 30, quoting Prof.Cond.R. 1.5(a).

{¶ 17} The parties in this matter agreed there was a contract between them in the form of a commercial lease, but they differed as to the interpretation of the landlord's entitlement to attorney's fees for this litigation. Despite the title of appellee's motion, the trial court determined there was no settlement agreement with respect to attorney's fees. Without the existence of a settlement agreement on attorney's fees, there was no breach of a settlement agreement for appellee to enforce. *See id.* at ¶ 26.

{¶ 18} The record does not contain a separate writing containing the terms of the settlement and signed by the parties. However, the record contains the transcript of the settlement hearing held on September 21, 2016, and a review of the transcript assists us in our role to determine if the parties intended to be bound on the issue of attorney's fees as part of their settlement discussions. *Ohio N. Univ. v. Charles Constr. Servs., Inc.*, Slip Opinion No. 2018-Ohio-4057, ¶ 11. Oral settlement agreements may be enforceable where the words, deeds, acts, and silence of the parties indicate there is sufficient particularity to form a binding contract. *Bankers Trust Co. v. Wright*, 6th Dist. Fulton No. F-09-009, 2010-Ohio-1697, ¶ 16. The interpretation of a contract is a matter of law, which we review de novo. *Savoy* at ¶ 30; *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38.

{¶ 19} The discussion on September 21, 2016, between the parties and the trial court regarding settling the pending litigation was as follows:

8.

Court: * * *A resolution has been reached as at least as relates to the eviction, and I would look to Mr. Hanna who's here on behalf of the plaintiff * * * to place the terms of the resolution or settlement into the record.

Mr. Hanna: * * * Opposing counsel and I have reached a resolution, the terms of which would be as follows. * * * Plaintiff would agree to dismiss its complaint without prejudice, and NZR would agree to dismiss its counterclaims against both CIG and well as Mr. Chhajwani individually, reserving only the issue of CIG's entitlement to attorney's fees from NZR. As to that issue, we would request some period of time for opposing counsel and myself to trade information and discuss that matter to see if we can reach agreement on a number. But failing that, we would ask the Court to reserve jurisdiction to decide that issue on briefing from the parties.

Court: All right. So you believe you've resolved all claims that were asserted in your complaint. You want to carve out the potential of having to brief the issue of whether or not any attorney fees * * * your client is entitled to under the lease terms.

Mr. Hanna: Correct.

* * *

Court: I'm just trying to understand where the conflict that would require you to brief[;] where dies it lie? It lies in[,] is what he's seeking

reimbursement for is it a compensable expense under the lease term; correct?

Mr. Kirshner: Basically, yes.

Court: Okay. So that doesn't matter as long as he delineates what the work was.

Mr. Kirshner: Right. If there are two components, it has to be [pursuant to] the terms of the lease – whatever it is, but they also have to be reasonable. * * * Well, there is a provision in the lease which we acknowledge that the plaintiff is entitled to reimbursement of certain expenses in connection with enforcement of the lease. All right. There is no question but that the filing of the eviction constituted enforcement of the lease. Other activity, you know, we may argue was beyond that scope.

* * *

Mr. Hanna: I believe my statements provide sufficient detail that he'll be able to analyze my services.

Court: Well, you certainly will have that discussion and engagement with each other before you would submit it anyway.

Mr. Hanna: I'm looking forward to it.

Court: * * * [T]he reality is if Mr. Kirshner says can you give me some more clarification, what does this mean, what did you really do. You know, in your mutual effort to resolve this issue, you'd work through that

so that you really will know if you can't resolve that dispute, you'll have a clear understanding of what he's claiming the specific work was that he is entitled to reimbursement. Okay. All right. * * * Now, I next turn to Mr. Chhajwani. * * * You have been in court and you've heard all of the record that it was made first by your lawyer and then by Mr. Kirshner clarifying and articulating all the terms of the settlement of this case.

Mr. Hemant Chhajwani: Yes.

* * *

Court: Did you authorize your attorney Mr. Hanna to enter into those settlement terms in complete resolution of this case save for the carving out of reserving of the attorney fee issue?

Mr. Chhajwani: I did, yes, sir.

Court: All right. And you're speaking on behalf of the plaintiff CIG Toledo, LLC?

Mr. Chhajwani: That's correct.

Court: You are the managing partner?

Mr. Chhajwani: Yes. Yes. Exactly.

Court: Were there any terms that you believe are part of this settlement that have not been made part of the record?

Mr. Chhajwani: No, I think everything has been covered, sir.

Court:  Do you have any questions of me as to the consequence of entering into this settlement here?

Mr. Chhajwani:  No, I do not.

Court:  You understand the case gets dismissed.  If it ever gets reactivated, the only reactivation is for that narrow issue of asking the Court to resolve a dispute as to what if any attorney fees are owed under the lease.  Do you understand that?

Mr. Chhajwani:  I do.

* * *

Court.  [W]hat's your capacity for NZR?

Mr. Yazeed Qaimari:  President.

Court:  * * * You heard the terms of the settlement read into the record by Mr. Hanna assented to with clarification by your attorney Mr. Kirshner; correct?

Mr. Qaimari:  Yes.

Court:  * * * [D]o you have any questions about the terms that were read into the record?

Mr. Qaimari:  No, sir.

Court:  And did you authorize * * * on behalf of NZR the defendants in this case to settle this case under those terms?

Mr. Qaimari:  Yes, sir.

* * *

Court: Do you believe there are terms that were of settlement that were agreed to that were not made part of this record?

Mr. Qaimari: No, sir.

* * *

Court: Court accepts the terms of the settlement. We will put on an entry which indicates specifically that[,] based on that the case has been resolved. * * * I will modify that retention language to indicate that everything is resolved but for the attorney fees. You believe you can settle it without the Court's intercession, but if [not] so you would * * * petition the Court to have the case reactivated for that limited purpose.

{¶ 20} We agree with the trial court that the settlement hearing held on September 21, 2016, was clear that every aspect of appellee's July 26, 2016 complaint against the appellant and co-defendants arising under the commercial lease and the personal guaranties was settled, except for attorney's fees appellee was entitled to under the lease.

{¶ 21} After negotiations between the parties broke down, the record contains the transcript of the hearing on appellee's motion to enforce the settlement agreement held on October 5, 2017, and the trial court clarified the action sought by appellee was not to enforce the settlement agreement.

13.

It's not a motion to enforce a settlement. You each agreed that the matter was resolved with the exception of what is the amount of attorney fees that both sides were unable to agree to, and then you asked the Court to reserve jurisdiction should the parties not be able to reach an accord relative to the attorney fees to be awarded plaintiff. That's the only issue before me. So it's really a motion for attorney fees, not a motion to enforce settlement, because there's no settlement as to fees. You said we settled the case but for fees.

We agree with the trial court that appellee's motion to enforce settlement was, instead, a motion for attorney's fees.

{¶ 22} The trial court then proceeded, as journalized on October 20, 2017, to interpret the commercial lease and personal guaranties to "limit an award of reasonable fees to actions taken to enforce the Lease." Once again, our role is to determine the intent of the parties with respect to attorney's fees, this time under the commercial lease. *Ohio N. Univ.* at ¶ 11. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

{¶ 23} The record contains some discussion of the personal guaranties of the original co-defendants, who did not appeal the trial court's decision. A guaranty is a

14.

separate, independent and collateral contract in which the guarantor undertakes the obligation to pay for debts incurred by, or the performance of some duty by, another person or entity. *See Thayer v. Diver*, 6th Dist. Lucas No. L-07-1415, 2009-Ohio-2053, ¶ 77. Since appellant raised no assignment of error in this appeal specifically for the lease guaranty signed by the original co-defendants, we decline to interpret any aspect of that contract. App.R. 12(A)(2).

{¶ 24} Appellant points to paragraph 31 of the commercial lease to support its argument the scope of attorney's fees liability to appellee is limited to an enforcement action under the lease. The record contains the commercial lease entitled "BP Gas Station Lease" dated December 19, 2014, between appellee as "Landlord" and appellant as "Tenant." Paragraph 31 reads:

> ATTORNEY'S FEES. Should either party to this Lease institute any action or proceeding in court to enforce any provision hereof or for damage by reason of an alleged breach of any provision of this Lease or for a declaration of such party's rights or obligations hereunder, or for any other judicial remedy, the prevailing party shall be entitled to receive from the losing party such amount as the court may adjudge to be reasonable attorney's fees and costs for the services rendered the party finally prevailing in any such action or proceeding.

{¶ 25} Guided by paragraph 31, appellant argued appellee's July 28, 2016 attorney invoice was the first indication of any "service [that] pertains to going to court to *enforce*

the lease." (Emphasis sic.) Appellant argued the enforcement action ended with the settlement on September 21, 2016. Appellant conceded appellant's attorney spent 21.6 hours "prosecuting the eviction," but argued two of those hours to deliver the complaint to the clerk of courts was unreasonable and excessive.

{¶ 26} In contrast, appellee points to paragraph 4 of the commercial lease to support its argument the scope of appellant's attorney's fees liability to appellee is much broader than appellant conceded. Paragraph 4(a) of the lease reads, in part:

RENT. * * * This Lease is intended to be, and shall be construed as, an absolutely net lease, whereby under all circumstances and conditions (whether now or hereafter existing or within the contemplation of the parties) the rent payable to Landlord shall be a completely net return to Landlord throughout the term of this Lease; and Tenant shall pay, and shall indemnify, defend and hold harmless Landlord from and against any and all foreseeable or unforeseeable, fixed or contingent claims, losses, damages, expenses, costs, liabilities, obligations and charges whatsoever (including, without limitation, counsel fees) which shall arise or be incurred, or shall become due, during the term of this Lease, with respect to or in connection with, the Demised Premises, and the leasing, operation, management, maintenance, repair, rebuilding, use or occupation thereof, or any portion thereof.

16.

{¶ 27} Appellee argued its attorney's fees of $26,142.13 were reasonable, even though paragraph 4 of the lease did not require reasonableness, because it is a "triple net" commercial lease. Appellee argued because paragraph 4 did not limit the scope of attorney's fees recovery to an enforcement action, attorney's fees are clearly part of appellant's expenses under the "triple net" lease dating back to the May 28, 2015 invoice and ongoing while the attorney's fees themselves were disputed. Nevertheless, appellee did not argue the trial court abused its discretion when it awarded only $16,866 in reasonable attorney's fees.

{¶ 28} This court has previously held "'recovery of attorney fees pursuant to a contractual provision is not permitted unless the parties specifically negotiated the contractual term so providing.'" *Flower v. Hall*, 6th Dist. Sandusky No. S-13-033, 2014-Ohio-1671, ¶ 22, quoting *Executive Business Centres v. Transpacific Mfg.*, 6th Dist. Lucas No. L-08-1060, 2009-Ohio-516, ¶ 55.

{¶ 29} Our de novo review of the commercial lease leads us to interpret the language of paragraph 31 as prevailing in this appeal. This appeal arose from appellee's complaint filed on July 26, 2016, specifically to remedy alleged breaches of the lease by appellant and to enforce provisions of the lease entitling it to the remedies sought: evicting appellant from the premises and monetary restitution. Appellant and appellee do not dispute the existence and enforceability of paragraph 31 of the commercial lease. We find paragraph 31 clearly and unambiguously applies to the underlying eviction litigation

17.

to this appeal. We further find appellee initiated the eviction litigation with the preparation of the notice of eviction by Mr. Hanna on July 21, 2016.

{¶ 30} Our de novo review of the September 21, 2016 oral settlement agreement of the underlying litigation leads us to only one interpretation: that all then-pending monetary and non-monetary disputes between appellant and appellee under the commercial lease, including the paragraph 4 obligations, were settled by them, except for the determination of attorney's fees under paragraph 31. Under paragraph 31 we find appellee was the "prevailing party" in the litigation instituted by appellee, appellant was the "losing party," and appellee is entitled to receive from appellant "reasonable attorney's fees and costs for the services rendered the party finally prevailing in any such action or proceeding." The trial court appeared to concur with this interpretation when it stated, "it is clear that the provisions in the parties' agreements limit an award of reasonable fees to actions taken to enforce the Lease."

{¶ 31} Nevertheless, we find the trial court abused its discretion when it awarded appellee reasonable attorney's fees in the amount of $16,866 because the award included at least twelve months of general legal services prior to appellee instituting the present eviction litigation upon preparing the notice of eviction on July 21, 2016. For example, the trial court's award determination began with Mr. Hanna's invoice listing the first attorney service description as occurring on May 27, 2015, and as "Correspondence w/client re: insurance and related matters; review certificates of coverage." We do not find any clear support in the record the May 27, 2015 attorney fee proffer by appellee

18.

was to "institute any action or proceeding in court to enforce any provision hereof or for damage by reason of an alleged breach of any provision of this Lease or for a declaration of such party's rights or obligations hereunder, or for any other judicial remedy."

{¶ 32} Appellee's expert witness, Christopher Parker, averred in his May 11, 2017 affidavit in support of appellee's motion for attorney fees, "The work performed by Mr. Hanna as detailed in the invoices was reasonable and appeared necessary to represent CIG during the term of the Lease." We find the attorney's fees for general legal services during the lease term are not the same as the paragraph 31 attorney's fees to "institute any action or proceeding in court to enforce any provision hereof or for damage by reason of an alleged breach of any provision of this Lease or for a declaration of such party's rights or obligations hereunder, or for any other judicial remedy," which was the underlying litigation to this appeal.

{¶ 33} We further find the reasonable attorney's fees under paragraph 31 of the commercial lease to be as follows, according to Mr. Hanna's invoices from three different law firms and contained in the record:

| Date of Service | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| July 21, 2016 | "T/C w/ client re eviction and related remedies; prepare Notice of Eviction" | 1.6 | $250.00 | $400.00 |
| July 22, 2016 | "Post Notice of Eviction at premises; forward to NZR and guarantors, and to client" | 1.5 | $250.00 | $375.00 |
| July 25, 20126 | "Prepare Complaint and exhibits, Case Designation and Service Instructions" | 7.2 | $250.00 | $1,800.00 |

19.

| July 26, 2018 | "File Complaint; attention to service and courtesy copy to opposing counsel" | 2.0 | $250.00 | $500.00 |
|---|---|---|---|---|
| July 26, 2018 | "Filing Fee – Lucas County Common Pleas" | | | $275.00 |
| August 15, 2016 | "Receipt and review of Answer and Counterclaim; conference call with client and opposing side" | 1.2 | $250.00 | $300.00 |
| August 16, 2016 | "Attention to correspondence from client forwarding documents relevant to tortious interference counterclaims; review documents" | 0.6 | $250.00 | $150.00 |
| September 20, 2016 | "Meeting with H. Chhajwani re: FED hearing; witness preparation; compile exhibits and related hearing materials" | 4.0 | $250.00 | $1,000.00 |
| September 21, 2016 | "Prepare for and attend FED hearing" | 3.0 | $250.00 | $750.00 |
| | TOTAL | 21.1 | | $5,550.00 |

{¶ 34} Appellant's first assignment of error is well-taken.

{¶ 35} Appellant's second assignment of error is not well-taken. We find Mr. Hanna's two-hour time entry on July 26, 2016, to "File Complaint; attention to service and courtesy copy to opposing counsel" does not lead us to a definite and firm conviction that the fee is excessive according to the record before us.

{¶ 36} The trial court's grant of appellee's motion for attorney's fees is affirmed, but the award of attorney's fees is reduced. We find the trial court erred in awarding $16,866 in reasonable attorney's fee to appellee. The trial court's attorney's fee award

20.

should have been $5,550.  Accordingly, pursuant to App.R. 12, judgment is entered for appellee in the amount of $5,550.

{¶ 37} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, reversed, in part, and modified, in part.  Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
reversed in part,
and modified in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

Thomas J. Osowik, J. _____

Christine E. Mayle, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.