[Cite as *Altercare of Canal Winchester Post-Acute Rehab. Ctr. v. Turner*, 2019-Ohio-1011.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Altercare of Canal Winchester Post-Acute    :
Rehabilitation Center, Inc.

   :

      Plaintiff-Appellant,

   :           No. 18AP-466

v.                    (M.C. No. 2015CVF-24361)

   :

Connie S. Turner et al.,           (REGULAR CALENDAR)

   :

      Defendants-Appellees.

   :

D E C I S I O N

Rendered on March 21, 2019

**On brief:** *Bonezzi Switzer Polito & Hupp Co. L.P.A.*, *Steven J. Hupp*, and *Christopher F. Mars*, for appellant. **Argued:** *Christopher F. Mars*.

**On brief:** *Legal Aid Society of Columbus*, *Ashley B. Saltzman Socha*, and *Kathleen C. McGarvey*, for appellee Victoria Cox. **Argued:** *Ashley B. Saltzman*.

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Plaintiff-appellant, Altercare of Canal Winchester Post-Acute Rehabilitation Center, Inc., appeals the May 9, 2018 judgment of the Franklin County Municipal Court rendering judgment in favor of defendants-appellees, Victoria Cox ("Cox") and Connie S. Turner ("Turner"), and dismissing appellant's complaint. For the following reasons, we affirm the judgment of the trial court.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellant is a licensed nursing home located in Canal Winchester.  Turner was a resident at appellant's facility on two separate occasions in the fall of 2014 following her back surgeries.  Cox is Turner's adult grandchild.

{¶ 3}   On July 28, 2015, appellant filed a complaint seeking judgment against Turner for unjust enrichment and on account and seeking judgment against Cox for breach of contract and personal guarantee of payment.  In the complaint, appellant generally alleged that Turner had not paid $7,764 for nursing care and services appellant provided to Turner and that, by signing two residency agreements and two personal guarantee of payment agreements ("guaranties"), Cox was liable for Turner's financial obligation and breached those agreements in not paying appellant in full.  Turner filed an answer and counterclaim on September 8, 2015, and Cox filed an answer on September 16, 2015.

{¶ 4}   The parties attempted mediation twice in the first half of 2016, but the case was not settled and was thereafter returned to the active docket of the trial court.  On May 5, 2016, Turner dismissed her counterclaim.  The parties thereafter filed cross-motions for summary judgment.  On August 16, 2017, the trial court denied both motions for summary judgment and set a non-jury trial before a magistrate on the merits of the case.

{¶ 5}   The trial before the magistrate was held on September 19, 2017; all parties appeared and were represented by counsel.  Appellant called Bridget Bazzinotti, a senior account representative for appellant, to testify.  According to Bazzinotti, Turner received skilled services under Medicare as an in-house patient for the periods of July 17 through September 13 and September 30 through October 18, 2014.  Turner's primary payer was Medicare.  Bazzinotti testified that Medicare allows 100 days of eligibility whereby Medicare pays 100 percent for days 1 through 20 and then pays 80 percent for days 21 through 100; a coinsurance amount of $152 per day begins at day 21.  Turner had secondary insurance through Anthem, who would pay the coinsurance for days 21 through 30 at 100 percent.  Bazzinotti testified that after Medicare and Anthem's coverage ended, Turner accrued a balance of $7,764 and had not paid that amount.  On cross-examination, Bazzinotti testified she was not present for Turner's admissions and had no personal knowledge of conversation that occurred during Turner's admission.

{¶ 6}   Both Turner and Cox testified in their own defense.   Turner, who was approximately 73 years old when she entered appellant's facility in 2014, testified she was competent on admission to appellant's facility but was not asked to sign a residency agreement for either of her stays.  According to Turner, she asked appellant's staff multiple times whether she would owe money and was told the stays were being paid through insurance companies, and Turner would not owe appellant anything out of pocket.  Turner testified she would not have continued to stay at the nursing facility and would have left immediately had she known she would owe money.  According to Turner, she expressly told appellant's staff she could not afford out-of-pocket payments since her husband was in another nursing home with dementia, and she was assured by appellant's staff she did not owe anything.

{¶ 7}   Cox, who was approximately 21 years old when her grandmother entered appellant's facility in 2014, testified she was not Turner's power of attorney in July or September 2014 and did not have authority to manage, access, or control any of Turner's income or financial accounts.  According to Cox, Turner admitted herself into appellant's care, but appellant's staff called Cox numerous times to get her to sign paperwork, did not tell her signing the paperwork was optional, and instead "made it seem like it was mandatory" and "urgent."  (Tr. at 48.)  Cox went to appellant's facility after normal business hours to sign the paperwork.  Appellant's secretary had the paperwork at her desk and, in Cox's view, implied the paperwork was required for her grandmother to be able to stay at the facility.

{¶ 8}   Appellant's exhibits, admitted into evidence, included the July 7, 2014 residency agreement, September 30, 2014 residency agreement, the July 22, 2014 personal guarantee of payment, the October 2, 2014 personal guarantee of payment, a resident census detail and statement, and two post-admission letters.  Turner and Cox submitted a bill from appellant as an exhibit, which was also admitted into evidence.[1]

{¶ 9}   On November 1, 2017, the magistrate filed a decision finding in favor of Cox on the breach of contract claim and finding in favor of appellant on the action on account against Turner.  Regarding the breach of contract claim against Cox, the magistrate found

---

[1] We note the exhibits admitted for both parties do not appear in the appellate record.  However, the documents necessary to resolve this appeal (the residency agreements and the guaranties) are in the record of appeal as attachments to the complaint and to appellant's motion for summary judgment.

Cox was not authorized to sign the residency agreements on Turner's behalf and was not an agent of Turner, no valid contract had formed between Turner and appellant based on the residency agreements, and, without a valid underlying contract, the guaranties could not be enforced against Cox. In doing so, the magistrate found "[t]he language in the personal guarantee form makes clear that the personal guarantee is for payment for services rendered under a contract." (Mag.'s Decision at 3.) Regarding the action on account against Turner, the magistrate found Turner had not established equitable estoppel and was liable to appellant on the account claim.

{¶ 10} Appellant and Turner filed objections to the magistrate's decision pursuant to Civ.R. 53(D)(3). Turner objected, in pertinent part, to the magistrate's finding on the evidence of promissory estoppel, and appellant generally objected to the magistrate failing to find a contract existed between Cox and appellant.

{¶ 11} The trial court, on May 9, 2018, issued a judgment sustaining Turner's objection as to promissory estoppel; in doing so, the trial court noted appellant did not present any evidence to contest Turner's testimony that she continued to stay at the facility in reliance on appellant's assurances that insurance companies were paying for everything. The trial court further overruled appellant's objection regarding Cox, stating:

> The Magistrate found the evidence showed * * * Cox did not have any authority to sign a contract on behalf of * * * Turner. The Court agrees. [Appellant's] objection cites cases about enforcing parties' intent in a contract. However, the issue is that the evidence showed * * * Cox did not have legal authority to sign the contract for her grandmother, as a matter of fact. Because no contract was formed, * * * Cox is not liable on the personal guarantees.

(May 9, 2018 Jgmt. Entry at 1.) Thus, the trial court adopted the magistrate's decision to the extent it denied judgment against Cox and then denied judgment against Turner and dismissed appellant's complaint.

{¶ 12} Appellant filed a timely notice of appeal.

## II. ASSIGNMENT OF ERROR

{¶ 13} Appellant assigns the following as trial court error:

> THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CASE, AND FAILING TO ENTER JUDGMENT AS A MATTER

OF LAW, ON APPELLANT'S CLAIM AGAINST MS. COX FOR
BREACH OF THE PERSONAL GUARANTEE AGREEMENT.

## III. STANDARD OF REVIEW

{¶ 14} Pursuant to Civ.R. 53(D)(4)(d), "[i]f one or more objections to a magistrate's decision are timely filed, the [trial] court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Thus, " '[i]f objections are filed, a trial court undertakes a de novo review of a magistrate's decision.' " *Gallick v. Benton*, 10th Dist. No. 18AP-171, 2018-Ohio-4340, ¶ 15, quoting *Meccon, Inc. v. Univ. of Akron*, 10th Dist. No. 12AP-899, 2013-Ohio-2563, ¶ 15.

{¶ 15} Generally, an appellate court reviews the trial court's decision to adopt, reject, or modify the magistrate's decision for an abuse of discretion. *Tedla v. Al-Shamrookh*, 10th Dist. No. 15AP-1094, 2017-Ohio-1021, ¶ 11, citing *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 16; *Gallick* at ¶ 15. An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Questions of law are reviewed de novo on appeal. *PHH Mtge. Corp. v. Ramsey*, 10th Dist. No. 13AP-925, 2014-Ohio-3519, ¶ 14; *In re Adoption of N.D.D.*, 10th Dist. No. 18AP-561, 2019-Ohio-727, ¶ 27. *See also AM & JV, LLC v. MyFlori, LLC*, 10th Dist. No. 16AP-713, 2018-Ohio-600, ¶ 18.

## IV. LEGAL ANALYSIS

### A. Appellant's Assignment of Error

{¶ 16} Appellant contends the trial court erred in finding in favor of Cox on its claim for breach of the personal guarantee agreements and dismissing its case. For the following reasons, we disagree.

{¶ 17} "Under Ohio law, '[a] guaranty is a contract through which one party guarantees payment for debts incurred by another person or entity.' " *LB-RPR REO Holdings, LLC v. Ranieri*, 10th Dist. No. 11AP-471, 2012-Ohio-2865, ¶ 23, quoting *Thayer v. Diver*, 6th Dist. No. L-07-1415, 2009-Ohio-2053, ¶ 77. *SDI/Columbus Equities L.P. v. Scranton*, 10th Dist. No. 93AP-247 (July 13, 1993) (noting distinction between a guaranty, in which a person becomes secondarily liable for another's debt, and a surety, in which a

person is primarily liable with the principal debtor). Generally, a guaranty is an independent contract separate from and collateral to the original contract of the principal. *Id.*, citing *Black's Law Dictionary* 634 (5 Ed.Rev.1979). *CIG Toledo LLC v. NZR Retail of Toledo, Inc.*, 6th Dist. No. L-17-1282, 2019-Ohio-160, ¶ 23 ("A guaranty is a separate, independent and collateral contract in which the guarantor undertakes the obligation to pay for debts incurred by, or the performance of some duty by, another person or entity.").

{¶ 18} The determination of whether the guarantor is liable for the principal's debt is based on what the parties to the guaranty agreed. *Jae Co. v. Heitmeyer Builders, Inc.*, 10th Dist. No. 08AP-1127, 2009-Ohio-2851, ¶ 14-16; *Whichard v. Matthews*, 8th Dist. No. 98689, 2013-Ohio-1892, ¶ 41 ("It is well established in Ohio law that a guarantor is only bound by the precise words of his contract."). As a contract, a guaranty is subject to the same rules and principles applicable to general contract formation and interpretation. *Ranieri* at ¶ 23; *Jae Co.* at ¶ 11-12. When reviewing a contract, the objective is "to effectuate the intent of the parties." *State ex rel. Montgomery v. R.J. Reynolds Tobacco Co.*, 152 Ohio App.3d 345, 2003-Ohio-1654, ¶ 37 (10th Dist.); *Jae Co.* at ¶ 12.

{¶ 19} The intent of the parties is presumed to reside in the language in the contract. *Montgomery* at ¶ 16. Thus, " '[i]f a guaranty's terms are clear and unambiguous, a court may not construe it to have another meaning.' " *Ranieri* at ¶ 23, quoting *O'Brien v. Ravenswood Apts., Ltd.*, 169 Ohio App.3d 233, 2006-Ohio-5264, ¶ 23 (1st Dist.). *Donini v. Fraternal Order of Police*, 4th Dist. No. 08CA325, 2009-Ohio-5810, ¶ 16 ("When the words used in a contract are clear and unambiguous, courts need look no further than that language."). Furthermore, " 'if a contract is ambiguous so that it may either extend or limit a guarantor's obligation, such contract should be construed to limit the obligation.' " *Bank One, Columbus, N.A. v. Girardi's Restaurant & Bar*, 10th Dist. No. 93AP-1024 (Mar. 3, 1994), quoting *Yearling Properties, Inc. v. Tedder*, 53 Ohio App.3d 52, 54 (10th Dist.1988).

{¶ 20} Parties to a guaranty are presumed to have read and understood the terms of the guaranty he or she signed. *Ranieri* at ¶ 28, quoting *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, ¶ 10.

{¶ 21} In support of its assignment of error, appellant argues the "trial court improperly considered the residency agreements in deciding whether * * * Cox breached the personal guarantees of payment," which have "absolutely no bearing" on Cox's

responsibility to pay.[2]  (Appellant's Brief at vii, 8-9.)  According to appellant, the guaranties, as "independent and separate" contracts from the residency agreements, bound Cox to be jointly and severally[3] responsible for Turner's financial obligation to appellant.  (Appellant's Brief at 8.)  Appellants cite to *Brown Derby v. NTK*, 8th Dist. No. 68402 (June 8, 1995), citing *Yearling*; *Altercare of Mayfield Village, Inc. v. Berner*, 8th Dist. No. 104259, 2017-Ohio-958, and Ohio Jury Instruction 509.01 in support of the proposition that the separate and independent nature of the guaranties executed here continue to obligate Cox to pay appellant.

{¶ 22}  Cox does not dispute that she signed the guaranties but, instead, asserts the trial court correctly held the guaranties are unenforceable because the contracts underlying the guaranties—the residency agreements—do not exist, and, therefore, there is no obligation for her to guarantee.  Cox cites to *Dearth Homes, Inc. v. Cline*, 5th Dist. No. 03CA000013, 2003-Ohio-6314, ¶ 8, which held "there is nothing for a guarantor to guarantee" where the nursing home resident was not actually bound to the admission agreement.  Cox argues the *Berner* case was incorrectly decided, distinguishable, and demonstrates a pattern of improper admission practices by appellant.  Relatedly, Cox argues requiring her to sign the guaranties as a condition of Turner's admission or continued stay violates federal law.  Cox further argues that because the trial court found Turner is not liable to appellant and appellant did not appeal that ruling, there is no debt remaining for Cox to pay even if the guaranties are enforceable.

---

[2] Appellant later argues in its appellate reply brief that "[a]lthough consideration of a [r]esidency [a]greement is improper when analyzing whether a [p]ersonal [g]uarantee is enforceable," the residency agreements are valid based on Cox entering in the residency agreement as an "apparent agent" of Turner.  (Appellant's Reply Brief at 5, 7.)  Appellant did not raise the issue of apparent authority in its objections to the trial court, which, under Civ.R. 53(D)(3)(b)(ii), are required to be specific and stated with particularity.  Furthermore, appellant did not assign the trial court's adoption of the magistrate's finding on Cox's lack of authority as error on appeal, raise the issue of apparent authority in its original appellate brief, or argue plain error on appeal.  Instead, appellant chose to base its assignment of error on the premise that considering the residency agreements at all is improper and, in and of itself, requires reversal.  Considering all the above, we find appellant did not properly raise and argue the issue of apparent authority and decline to address the issue for the first time on appeal.  *See* Civ.R. 53(D)(3)(b)(iv); *Quaye v. N. Mkt. Dev. Auth.*, 10th Dist. No. 15AP-1102, 2017-Ohio-7412, ¶ 28-29; *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18 ("Appellate courts generally will not consider a new issue presented for the first time in a reply brief.").

[3] We note appellant does not argue Cox is primarily liable as a surety (rather than secondarily liable as guarantor) or provide legal support for this theory.  All the legal authority provided by appellant is provided in support of Cox as a guarantor.  The general differences between a guarantor and a surety are summarized in *Madison Natl. Bank v. Weber*, 117 Ohio St. 290, 293 (1927).

{¶ 23} We agree with Cox.  First, consistent with case law such as *SDI/Columbus Equities L.P.*, provided above, we agree with appellant's characterization of the guaranties as separate and independent contracts from the underlying residency agreements that attempted to bind Turner and appellant.  However, it appears the trial court did essentially treat the guaranties as separate contracts and, in interpreting them, found the language of the guaranties in this case showed the parties intended each guaranty to flow from services rendered under the residency agreement cited within them.  Contrary to appellant's primary argument, considering the guaranties explicitly reference the residency agreements, we find the trial court's consideration of the residency agreements in interpreting the language of the guaranties to be proper.

{¶ 24} Second, the language of the guaranties supports the trial court's conclusion that the guaranties cannot be enforced without valid underlying contracts.  The guaranties executed by appellant and Cox on July 22 and October 2, 2014 are identical forms entitled "Personal Guarantee of Payment," with blank spaces provided to identify the resident and the guarantor.  Cox and Turner's names are handwritten into the form.  The forms state:

> *Connie Turner (the "Resident") has entered into an agreement with Altercare of Canal Winchester Post-Acute Rehabilitation Center, Inc. ("Facility") for the provision of certain service and supplies.* Victoria Cox (the "Guarantor") wants to ensure that the Resident receives all service and supplies that he/she desires regardless of whether he/she can personally afford the services and supplies, or whether such services or supplies are covered by a third party payer, such as insurance.  Thus, the Guarantor voluntarily guarantees payment to the facility for all services and supplies that have been provided, or will be provided in the future, to the Resident. That is, *the Guarantor agrees to be jointly and severally liable for the Resident's financial obligations to Facility.*
>
> In exchange for this guarantee and for all payments being made as they are due, Facility agrees to continue to provide services and supplies to the resident regardless of his/her personal ability to pay for those services or supplies, or to have the services or supplies paid for by a third party.
>
> The Guarantor understands that he or she is not required by law, or by Facility, to personally guarantee payment. The Guarantor is agreeing to be liable along with and in addition to

the Resident for all charges incurred by the Resident at Facility on a voluntary basis.

*This Personal Guarantee of Payment agreement shall continue until the Resident's admission agreement with Facility is terminated and all financial obligations to Facility have been paid in full.* The Guarantor may not terminate the obligations in this Personal Guarantee of Payment agreement prior to that time.

**THE GUARANTOR DOES FOR HIMSELF/HERSELF, AND ON BEHALF OF HIS/HER HEIRS, ADMINSTRATORS AND EXECUTORS, AND FACILTY DOES ITSELF, AGREE TO THE TERMS OF THIS PERSONAL GUARANTEE OF PAYMENT.**

(Italics added and bold sic.) (July 22 and Oct. 2, 2014 Personal Guarantee of Payment at 1.) The guaranties thus are both initially premised on a valid, binding residency agreement in place between appellant and Turner and continue to exist (or not) based on the status of the residency agreements. As such, we agree with the trial court that the plain language of the guaranties impose liability for the resident's financial obligations to the facility arising out of the residency agreements and that, without a residency agreement, the guaranties cannot be enforced.

{¶ 25} Third, the posture of this case leaves Turner with no financial obligation to appellant. Under legal principles of guaranty and suretyship, a judgment rendered in favor of the principal debtor (or "obligor") generally bars the party owed (or "obligee") from asserting a claim against the guarantor (or "secondary obligor") to enforce the secondary obligation. 4 Restatement of Law, Suretyship and Guaranty, Section 67. This principle is consistent with the nature of a guaranty, which, as stated earlier, is to obligate one party to pay debts incurred by another person. *Ranieri* at ¶ 23. Moreover, the language of the instant guaranty reflects Cox is only liable for "[Turner's] financial obligations to [appellant]." (July 22 and Oct. 2, 2014 Personal Guarantee of Payment at 1.)

{¶ 26} Here, the trial court held Turner is not liable to appellant. Appellant did not appeal this holding, does not otherwise argue Turner retains a debt to appellant, or provide legal support for why a debt survives on these facts. As such, appellant has not shown a "financial obligation" on the part of Turner that remains to be paid back to appellant, which would trigger Cox's promise to pay as a guarantor. Therefore, appellant fails to

demonstrate reversible error on appeal.  "The burden of affirmatively demonstrating error on appeal rests with the [appellant]."  *Miller v. Johnson & Angelo,* 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2; *see also* App.R. 9 and 16(A)(7).

{¶ 27} Finally, we note this case is distinguishable from *Berner*.  In *Berner*, the Eighth District affirmed the trial court's grant of directed verdict in favor of appellant against a guarantor who was the daughter of a former resident.  Like in this case, in *Berner*, the daughter of a resident of appellant signed both a residency agreement and a personal guarantee of payment.  However, the appeal did not involve issues regarding the daughter's authority to sign the residency agreement and whether the personal guarantee of payment could be enforced absent a valid contract underlying the guaranty.  To the contrary, the daughter acknowledged the legitimacy of the residency agreement by arguing on appeal that appellant materially breached the residency agreement through negligent care of her father.  Furthermore, *Berner* did not involve an appeal of a breach of the personal guarantee agreement after the trial court held the resident was not liable to appellant at all and that issue was not appealed.  Because of these distinctions, *Berner* does not support reversal in this case.

{¶ 28} Considering all the above, we find the trial court did not err in entering judgment for Cox on the personal guarantee of payment claim.

{¶ 29} Accordingly, we overrule appellant's assignment of error.

## V.  CONCLUSION

{¶ 30} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BROWN and BRUNNER, JJ., concur.

_____