**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Roseman,* **Slip Opinion No. 2019-Ohio-1850.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1850

COLUMBUS BAR ASSOCIATION *v.* ROSEMAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Roseman,* Slip Opinion No. 2019-Ohio-1850.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to provide competent representation to a client, failing to abide by a client's decision whether to settle a matter, failing to act with reasonable diligence in representing a client, and failing to keep a client reasonably informed about the status of a matter—Two-year suspension.*

(No. 2018-1439—Submitted January 9, 2019—Decided May 16, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-012.

_____

**Per Curiam.**

{¶ 1} Respondent, Darwin Richard Roseman, of Westerville, Ohio, Attorney Registration No. 0064756, was admitted to the practice of law in Ohio in 1995.

{¶ 2} On July 26, 2016, we suspended Roseman for one year with six months stayed on conditions for his failure to act with reasonable diligence and provide competent representation in a client's personal-injury case, his failure to reasonably communicate with that client, and his efforts to conceal the consequences of his inaction. *Columbus Bar Assn. v. Roseman*, 147 Ohio St.3d 317, 2016-Ohio-5085, 65 N.E.3d 713. Roseman has not applied for reinstatement, *see* Gov.Bar R. V(24), and the suspension remains in effect.

{¶ 3} In a March 2018 complaint, relator, Columbus Bar Association, charged Roseman with violations of multiple professional-conduct rules arising from his representation of a husband and wife in a personal-injury action. Among other things, relator alleged that Roseman failed to provide competent representation, failed to abide by the clients' decisions about whether to settle their case, failed to act with reasonable diligence and promptness, and failed to reasonably communicate with the clients. Relator further alleged that Roseman's eventual withdrawal from representation in the case materially and adversely affected his clients' interests. In addition, relator charged Roseman with failing to respond to its demands for information during the ensuing investigation.

{¶ 4} The parties entered into stipulations of fact and agreed that Roseman committed nine of the alleged rule violations, and relator agreed to dismiss five others. The parties also stipulated that four aggravating factors are present and agreed that a two-year suspension with six months stayed on conditions is the appropriate sanction for Roseman's misconduct. Although the Board of Professional Conduct accepted the parties' stipulations of fact and misconduct, it found that a two-year suspension with no stay is more consistent with our

precedent. We accept the board's findings and conclusions and agree that a two-year suspension with no stay is the appropriate sanction in this case.

**Misconduct**

*Count One: The Backus Matter*

{¶ 5} John and Sandie Backus were both injured in a multivehicle accident in August 2007. In October 2007, the Backuses retained Roseman to pursue personal-injury claims on their behalf.

{¶ 6} Roseman filed a complaint against the alleged tortfeasor and the Backuses' provider of uninsured/underinsured-motorist coverage, American National Property and Casualty Company ("ANPAC"). Both defendants answered the complaint and served discovery requests on Roseman—but Roseman did not respond to those requests or to subsequent inquiries regarding the status of the responses to those requests.

{¶ 7} The defendants separately obtained court orders compelling Roseman to respond to their discovery requests. Rather than comply with those orders, Roseman dismissed the Backuses' complaint on January 22, 2010, without their knowledge or consent.[1] That same day, Roseman sent letters to the defendants' counsel informing them that he planned to submit settlement materials to them "within the next few weeks." On January 21, 2011, he refiled the complaint without having presented any settlement materials to either defendant. Roseman did not attempt to obtain service of the refiled complaint on the alleged tortfeasor or engage in any settlement negotiations with her counsel—purportedly because her insurance coverage had been exhausted by other claims arising out of the same accident.

---

1. Civ.R. 41(A)(1) generally gives a plaintiff one opportunity to voluntarily dismiss all claims without prejudice at any time before the commencement of trial. Pursuant to R.C. 2305.19(A), those claims may be refiled within one year after the date of dismissal. *See Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987), paragraph two of the syllabus.

{¶ 8} ANPAC answered the refiled complaint and served Roseman with discovery requests in early February 2011, but Roseman did not provide responses to the requests even though he told ANPAC's counsel several times that he would do so soon. On June 7, 2011, the court granted ANPAC's motion to compel discovery and gave the Backuses 14 days to provide their responses. On the date the responses were due, Roseman sent a letter and the Backuses' medical records to ANPAC's counsel and requested an additional week to respond to the remaining requests—but he also called and left a voicemail message claiming that the responses had been sent out that day.

{¶ 9} Because ANPAC's counsel did not receive the Backuses' discovery responses by the court-ordered deadline, he moved the court to either dismiss the case or to impose discovery sanctions and to award attorney fees. Roseman opposed that motion, claiming that the medical records he had provided were nearly 100 percent of the materials necessary for ANPAC to evaluate the Backuses' claims.

{¶ 10} Shortly after the court denied the motion to dismiss in July 2011, ANPAC's counsel offered to settle the case for $20,239.90. Roseman did not directly respond to that offer for some time, but he and ANPAC's counsel in January 2012 began to discuss the possibility of reaching a settlement. On March 26, 2012, more than four years after the Backuses' accident and about eight months after receiving ANPAC's offer, Roseman made his first settlement demand. Although he had previously stated that he had received a subrogation claim from a medical insurer that exceeded $42,000, he demanded $40,000 from ANPAC to settle the Backuses' claims. He made that offer without the Backuses' knowledge or consent and without obtaining any expert opinion as to which of their medical conditions were directly related to the accident.

{¶ 11} Roseman spoke with ANPAC's counsel by telephone on April 4, 2012. At the end of that call, ANPAC's counsel believed that they had agreed to

settle the Backuses' case for a total of $40,000, $10,000 of which ANPAC had already paid toward the Backuses' medical bills. Roseman did not immediately inform the Backuses that he had settled their case. Instead, they heard the news from their chiropractor's billing office and called Roseman to express their dissatisfaction with his representation and with the terms of the settlement, which they claimed had been obtained without their consent.

{¶ 12} In light of the purported settlement, the court dismissed the Backuses' case on May 10, 2012. Although Roseman understood that ANPAC would not pay the settlement money until he resolved all medical-insurance-lien claims, he never completed that work. When the parties to this disciplinary action filed their agreed stipulations in July 2018, they stipulated that as of the date of that filing, the Backuses' matter remained unresolved.

*Count Two: Relator's Investigation*

{¶ 13} In response to a grievance filed by the Backuses, relator commenced an investigation into Roseman's conduct in September 2016. Roseman did not timely respond to relator's first letter of inquiry. Roseman did respond to relator's second letter of inquiry, stating that despite multiple demands from him, ANPAC's counsel had refused to issue a settlement check. He claimed that Sandie Backus had approved the settlement amount and that he believed that she had hired a collection attorney to enforce the agreement, and he stated that he had assumed that those efforts had been successful although he was surprised to learn that the Backuses had not received the settlement money.

{¶ 14} Roseman refused to meet with relator unless he was subpoenaed. Relator therefore served him with a subpoena duces tecum, ordering him to appear for his deposition and produce documents, including Roseman's entire file related to his representation of the Backuses or, if he no longer possessed the file, all documents related to his failure to maintain the file, including but not limited to "documentation such as insurance claims made due to flooding."

{¶ 15} Roseman appeared for the deposition and testified that the documents relator subpoenaed no longer existed, "[a]t least not with me." He "guessed" that he had destroyed the Backuses' file sometime between when his office flooded in 2011 and the end of 2016—perhaps in a bonfire in 2013 when he had destroyed many of his files for cases he considered to be closed. Roseman admitted that he had not offered the Backuses an opportunity to retrieve their file before he destroyed it and that he never verified that they had received their settlement check.

**Findings of Misconduct**

{¶ 16} The parties stipulated, the board found, and we agree that Roseman's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.2(a) (requiring a lawyer to abide by a client's decision whether to settle a matter), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.16(b)(1) (permitting a lawyer to withdraw from the representation of a client if the withdrawal can be accomplished without material adverse effect on the interests of the client), and 8.1(b) (prohibiting a lawyer from failing to disclose a material fact or knowingly failing to respond to a demand for information by a disciplinary authority during an investigation).

{¶ 17} We adopt these findings of fact and misconduct, and in accord with the parties' stipulations, we dismiss five additional alleged violations.

**Sanction**

{¶ 18} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 19} The board adopted three of the parties' four stipulated aggravating factors—namely that Roseman has previously been disciplined for professional misconduct, committed multiple rule violations, and caused harm to vulnerable clients. *See* Gov.Bar R. V(13)(B)(1), (4), and (8). Although the parties stipulated that Roseman had failed to make restitution to the Backuses, the board noted that the Backuses had not yet received the settlement Roseman negotiated on their behalf and that relator presented no evidence regarding Roseman's liability for restitution, let alone the amount that might be owed. The board also found that there was insufficient evidence to support Roseman's claim that he acted without a selfish motive, *see* Gov.Bar R. V(13)(C)(2), and determined that no other mitigating factors are present.

{¶ 20} The parties stipulated that Roseman should be suspended from the practice of law for two years with six months stayed, to be served concurrently with the sanction imposed in *Columbus Bar Assn. v. Roseman*, 147 Ohio St.3d 317, 2016-Ohio-5085, 65 N.E.3d 713. The board agreed that a two-year suspension, served concurrently with the previously imposed suspension, is the appropriate sanction in this case, but it recommends that no portion of this suspension be stayed. In addition, the board recommends that Roseman's reinstatement to the practice of law be conditioned on his completion of six hours of continuing legal education on law-office management and his compliance with the conditions of our July 26, 2016 disciplinary order. The board also recommends that Roseman be required to serve a two-year period of monitored probation. In support of the sanction, the board cited several cases in which we imposed partially stayed two-year suspensions for

similar misconduct but distinguished those cases from Roseman's on several grounds.

{¶ 21} In *Columbus Bar Assn. v. Balaloski*, 145 Ohio St.3d 121, 2016-Ohio-86, 47 N.E.3d 150, the charges arose from Balaloski's misconduct in six separate client matters. As part of a consent-to-discipline agreement, Balaloski agreed that he failed to act with reasonable diligence in five client matters, failed to reasonably communicate with four clients, failed to provide competent representation in two separate client matters, and once failed to promptly deliver funds or other property that a client was entitled to receive. As aggravating factors, Balaloski admitted that he engaged in a pattern of misconduct involving multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4).

{¶ 22} Unlike Roseman, however, Balaloski established that significant mitigating factors were present—Balaloski did not have a prior disciplinary record, did not act with a dishonest or selfish motive, and made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1), (2), and (4). He also presented evidence of his good character and reputation and established that his diagnosed depression contributed to his misconduct. *See* Gov.Bar R. V(13)(C)(5) and (7).

{¶ 23} We adopted Balaloski's consent-to-discipline agreement and suspended him from the practice of law for two years, but we stayed the second year of that suspension on the condition that he engage in no further misconduct. We also required him to submit proof upon applying for reinstatement to the practice of law that he had complied with Ohio Lawyers Assistance Program requirements and to serve one year of monitored probation upon his reinstatement.

{¶ 24} In *Disciplinary Counsel v. Folwell*, 129 Ohio St.3d 297, 2011-Ohio-3181, 951 N.E.2d 775, we imposed a two-year suspension with one year conditionally stayed, followed by a one-year period of monitored probation upon reinstatement, on an attorney who engaged in a pattern of misconduct involving

seven separate clients. Folwell neglected four clients' matters, failed to promptly refund unearned fees upon his withdrawal from representation in three cases, provided incompetent representation in a personal-injury matter, failed to maintain required trust-account records, and engaged in dishonest conduct by failing to abide by a court order to reduce his attorney fee and misappropriating client funds in one case and falsely telling another client that his case was being taken care of, even though Folwell had never filed it. He also improperly shared an attorney fee with his secretary, who was not an attorney. Aggravating factors included Folwell's dishonest or selfish motive and his commission of multiple offenses. *See* Gov.Bar R. V(13)(B)(2) and (4). But in contrast to Roseman, Folwell had no prior discipline and cooperated in the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1) and (4).

{¶ 25} Here, Roseman failed to provide competent legal representation, failed to act with reasonable diligence, and failed to obtain his clients' consent before dismissing their lawsuit—all in a single case. He also failed to pursue his clients' claims against the alleged tortfeasor, abandoned them after agreeing to settle their claim, and destroyed their file without collecting—let alone distributing—the proceeds of the settlement. And at the time of Roseman's disciplinary hearing—more than ten years after the Backuses' motor-vehicle accident and more than five years after Roseman had purportedly settled their claims—the Backuses had not received compensation for their injuries.

{¶ 26} Roseman failed to fully cooperate in relator's investigation of this misconduct and has previously been disciplined for committing similar violations in his representation of another client—though it appears that some of that misconduct was contemporaneous with the misconduct found in this case. *See Roseman*, 147 Ohio St.3d 317, 2016-Ohio-5085, 65 N.E.3d 713, at ¶ 3-6. Moreover, he has failed to present *any* mitigating evidence that would warrant the imposition of a less severe sanction. On these facts, we agree with the board's

determination that Roseman's conduct warrants a more severe sanction than that imposed in *Balaloski* and *Folwell*.

{¶ 27} Accordingly, Darwin Richard Roseman is suspended from the practice of law in Ohio for two years, to be served concurrently with the suspension we imposed in 2016. In addition to the requirements of Gov.Bar R. V(24), his reinstatement shall be conditioned on the submission of proof that he has completed six hours of continuing legal education in law-office management in addition to the requirements set forth in Gov.Bar R. X and that he has complied with all the conditions we imposed in his 2016 disciplinary case. Upon reinstatement to the practice of law, Roseman shall be required to work with a monitoring attorney appointed by relator for a period of two years. Costs are taxed to Roseman.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Mazanec, Raskin & Ryder Co., L.P.A., and Michael S. Loughry; David A. Goldstein Co., L.P.A., and David A. Goldstein; Robert D. Erney & Associates Co., L.P.A., and Robert D. Erney; and Kent R. Markus, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

James E. Arnold & Associates, L.P.A., and Alvin E. Mathews Jr., for respondent.

_____