[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Barbera*, Slip Opinion No. 2021-Ohio-2209.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2209

DISCIPLINARY COUNSEL *v.* BARBERA.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Barbera*, Slip Opinion No. 2021-Ohio-2209.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—18-month suspension, with 12 months stayed on conditions.*

(No. 2020-1199—Submitted March 4, 2021—Decided July 1, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-052.

_____

**Per Curiam.**

{¶ 1} Respondent, Richard Barbera, of Medina, Ohio, Attorney Registration No. 0064044, was admitted to the practice of law in Ohio in 1994.

{¶ 2} On March 15, 2017, we imposed a one-year conditionally stayed suspension on Barbera and ordered him to serve a one-year period of monitored probation for mismanaging his client trust account and failing to cooperate in the

ensuing disciplinary investigation. *Disciplinary Counsel v. Barbera*, 149 Ohio St.3d 505, 2017-Ohio-882, 75 N.E.3d 1248.

{¶ 3} In a September 27, 2019 complaint, relator, disciplinary counsel, alleged that Barbera committed additional misconduct in the course of representing a single client and once again failed to cooperate in the resulting disciplinary investigation.

{¶ 4} The parties submitted stipulations of fact, some misconduct, and aggravating and mitigating factors. A three-member panel of the Board of Professional Conduct heard testimony from Barbera and two other witnesses and admitted numerous exhibits. The panel issued a report finding that Barbera had committed all of the charged misconduct and recommending that he be suspended from the practice of law for 18 months, with the final 12 months conditionally stayed. The board adopted the panel's recommendation with the additional requirement that Barbera make $900 in restitution to his client. Barbera objects, arguing that there is insufficient evidence to support one of the violations found by the board and that a one-year conditionally stayed suspension is the appropriate sanction for his misconduct.

{¶ 5} For the reasons that follow, we overrule Barbera's objections and adopt the board's findings of misconduct and recommended sanction.

## Facts and Misconduct

{¶ 6} On June 20, 2017, Dianna Zanglin paid Barbera $2,500 to represent her in a pending child-support and custody proceeding. Zanglin informed Barbera that a hearing was scheduled for September 26. Ten days later, the court issued an amended hearing notice moving the hearing up to July 20, 2017. Barbera waited nearly six weeks to file his notice of appearance and did not check the court's docket during that time. Consequently, neither Zanglin nor Barbera appeared at the July 20 hearing. Five days later, the court issued a capias for Zanglin's arrest.

2

{¶ 7} On July 31, Barbera filed his notice of appearance and a motion to recall the capias, which included Zanglin's affidavit, in which she averred that she had not received the amended hearing notice. He also took Zanglin to the courthouse to resolve the matter. While at the courthouse, Zanglin was taken into custody and handcuffed, and she spent six hours in jail before she was released on an appearance bond.

{¶ 8} On August 10, a magistrate dismissed Zanglin's motion to modify child support based on her failure to appear and prosecute the motion at the July 20 hearing and the court simultaneously adopted that decision. Barbera filed a timely objection to the magistrate's decision on the ground that Zanglin had not received notice of the hearing.[1]

{¶ 9} On March 2, 2018, the magistrate issued, and the court adopted, a decision stating that Zanglin's motion to modify child support had been dismissed due to her failure to appear at the July 20 hearing to prosecute that motion— though it does not appear that the court had ruled on Zanglin's objection to that dismissal. Barbera again objected to the dismissal of the motion. Zanglin paid Barbera an additional $900 for a transcript of the July 20 hearing.

{¶ 10} On August 1, 2018, the court conducted a hearing on Zanglin's objection. Zanglin appeared, but Barbera had a hearing scheduled in another county. At his disciplinary hearing, Barbera testified that he had called Zanglin and instructed her to inform the court that he would be late for her hearing but that he had not directly notified the court. However, Zanglin testified that she had had no idea where Barbera was and could not reach him by phone or text message. Although Zanglin did not have any of the necessary documents, she represented

---

2. Pursuant to Civ.R. 53(D)(3)(b)(i), a party may file objections to a magistrate's decision within 14 days of the filing of the decision, even if the court has adopted the decision during that 14-day period.

herself at the hearing to avoid the dismissal of her objection. By the time Barbera arrived at the courthouse, the hearing had ended.

{¶ 11} The court overruled Zanglin's objection and Barbera appealed that judgment, but he failed to file an appellate brief. Barbera admitted that there was no basis in law or fact for the appeal and that he had filed it for the sole purpose of delaying the case until after the November 2018 election in the hope that the trial judge would be unseated and that the new judge would issue rulings that were more favorable to Zanglin. However, Zanglin's testimony suggests that Barbera did not adequately explain his purported strategy to her and that she believed there were reasonable grounds for the appeal.

{¶ 12} The court of appeals dismissed the case on December 7, 2018, but Barbera never informed Zanglin of that fact. Zanglin testified that she attempted to communicate with Barbera on numerous occasions in January and February 2019 but that he failed to respond to her calls and text messages or to appear for scheduled meetings on five or six occasions without providing her any notice. On February 20, 2019, she went to the courthouse, where the clerk informed her that her appeal had been dismissed more than two months earlier.

{¶ 13} In July 2018—prior to Zanglin's appeal—the trial court had found her in contempt for failing to timely pay her child-support obligation and arrearages. The court ordered her to serve ten days in jail for that contempt but gave her the opportunity to purge her contempt by paying her $734.40 obligation for a period of four consecutive months and establishing a parent account on a shared-parenting communication website. The court set a hearing for December 7, 2018, to review Zanglin's compliance with its order to purge her contempt but later continued the matter due to the pendency of her appeal.

{¶ 14} After the appeal was dismissed, the trial court reset the contempt hearing for February 15, 2019. Neither Barbera nor Zanglin appeared at that hearing. Consequently, the court found that Zanglin remained in contempt of

court, issued a capias for her arrest, and ordered her to serve the previously imposed ten-day jail sentence. Shortly thereafter, Zanglin received notice of the court's order. She retained new counsel who asked Barbera to provide a copy of her file, but Barbera did not comply with that request. When Zanglin appeared for a hearing in May 2019 with her new attorney, she was arrested on the capias and served her full ten-day jail sentence.

{¶ 15} Barbera admitted that although he received two letters of inquiry from relator about Zanglin's case, he did not submit any substantive response to relator until he complied with a subpoena to appear for his deposition.

{¶ 16} The parties stipulated and the board found that Barbera violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter) by failing to inform Zanglin that the appellate court dismissed her appeal and that he violated Prof.Cond.R. 3.1 (prohibiting a lawyer from bringing or defending a proceeding that is unsupported by law or lacks a good-faith argument for an extension, modification, or reversal of existing law) by filing a frivolous appeal in Zanglin's case. They also stipulated that he violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation).

{¶ 17} In addition, the board found that Barbera violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation) and that by repeatedly ignoring Zanglin's requests for information and missing meetings without providing any notice to Zanglin, Barbera violated Prof.Cond.R. 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client).

**Barbera's Objection to the Board's Findings of Misconduct**

{¶ 18} Barbera objects to the board's finding that he violated Prof.Cond.R. 1.4(a)(4). He argues that the panel heard conflicting testimony about whether he had missed meetings and failed to respond to Zanglin's communications. He also asserts that Zanglin's testimony is insufficient to establish these facts by clear and convincing evidence.

{¶ 19} In attorney-discipline matters, the relator must prove by clear and convincing evidence the facts necessary to establish an ethical violation. *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999), paragraph two of the syllabus. Clear and convincing evidence is an intermediate measure of proof that requires evidence sufficient to produce " 'a firm belief or conviction as to the facts sought to be established.' " *Id.* at 331, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 20} We have stated that "it is of no consequence that the board's findings of fact are in contravention of respondent's or any other witness's testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000), quoting *Cross* at 478. "Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 21} In this case, Barbera's testimony regarding his alleged missed meetings and failure to respond to Zanglin's communications is not in direct conflict with Zanglin's testimony. Barbera reluctantly admitted that although he did not recall missing any meetings with Zanglin or failing to notify her that he would be unable to attend, "It might have happened once or twice." And when

relator pressed him on the issue, asking, "When you and I previously spoke, you said you would not dispute it if Ms. Zanglin said there were meetings that you both missed and failed to notify her you would not be present on, correct?" Barbera conceded, "I mean, yeah. * * * I wouldn't dispute that it—it happened." Barbera's own testimony is therefore sufficient to support a finding that Barbera missed at least two—and by Zanglin's testimony, as many as five or six—client meetings.

{¶ 22} Zanglin also testified that she had attempted to reach Barbera by phone and text on numerous occasions in January and February 2019. It is true that relator did not submit documentary evidence to establish the date, time, or content of those attempted communications. However, Zanglin explained that in addition to placing calls and sending text messages to Barbera, she went to his office to inquire regarding his whereabouts and had even searched for his obituary on the Internet in an attempt to find some logical reason why he had not contacted her. She got her answer when she went to the courthouse on February 20, 2019, and learned that her appeal had been dismissed more than two months earlier. The timing and circumstances of Zanglin's efforts to communicate with Barbera—during which time he knew that her appeal had been dismissed yet failed to inform her—lend significant weight and credibility to Zanglin's testimony.

{¶ 23} For his part, Barbera testified only that he did not recall having any conversations with Zanglin between December 7, 2018, and February 15, 2019. He was not specifically asked whether he received text messages or phone calls from Zanglin. Nonetheless, contrary to Barbera's objection, Zanglin's testimony regarding her efforts to communicate with Barbera in January and February 2019—and his failure to respond to those communications—is sufficient to support the board's decision. Although Barbera alleges that relator's failure to produce telephone records documenting Zanglin's efforts to communicate with

him materially prejudiced his defense, he has offered no evidence that he ever requested those documents from relator.

{¶ 24} On these facts, we overrule Barbera's objections to the board's finding that he violated Prof.Cond.R. 1.4(a)(4). We also adopt the board's findings that Barbera's conduct in this matter violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.16(d), and 8.1(b).

**Sanction**

{¶ 25} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. We have consistently stated that "in determining the appropriate length of the suspension and any attendant conditions, we must recognize that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53.

{¶ 26} As aggravating factors, the parties stipulated that Barbera has a prior disciplinary record. *See* Gov.Bar R. V(13)(B)(1). The board also found that Barbera committed multiple offenses, that he failed to cooperate in the disciplinary proceedings for a second time, and that Zanglin was harmed by his neglect, which caused her to spend six hours in law-enforcement custody and contributed to her ten-day jail sentence for contempt of court. *See* Gov.Bar R. V(13)(B)(4), (5), and (8). In mitigation, the board found that Barbera did not act with a dishonest or selfish motive and that he presented the testimony of attorney Andrew Korduba (who represented Zanglin's ex-husband) and letters from two other attorneys attesting to his good character and reputation. *See* Gov.Bar R. V(13)(C)(2) and (5).

{¶ 27} The parties submitted posthearing briefs in support of their proposed sanctions. Relator argued that a two-year suspension with 18 months

stayed on conditions is the appropriate sanction for Barbera's misconduct, while Barbera urged the board to impose a conditionally stayed one-year suspension. After considering the cases cited by both parties, the board concluded that a fully stayed suspension was not appropriate in this case because Barbera (1) was on disciplinary probation when his misconduct occurred, (2) engaged in additional misconduct, namely a violation of Prof.Cond.R. 3.1, that was not at issue in the cases cited by the parties, (3) caused harm to his client, and (4) failed to cooperate in a disciplinary investigation for a second time. Instead, the board recommended that we suspend Barbera from the practice of law for 18 months with the final 12 months stayed on the conditions that he make restitution of $900 to Zanglin and engage in no further misconduct.

### Barbera's Objection to the Recommended Sanction

{¶ 28} Barbera objects to the recommended sanction. He argues that in determining the appropriate sanction for his misconduct, the board erroneously rejected the case that is most comparable to his—*Disciplinary Counsel v. McCray*, 156 Ohio St.3d 492, 2019-Ohio-1857, 129 N.E.3d 428. And on that authority, he urges us to impose a one-year fully stayed suspension for his misconduct.

{¶ 29} The board found that at first blush, *McCray* appeared to be a reasonable benchmark for Barbera's misconduct. Over a period of approximately nine months, McCray violated several rules of professional conduct in seven separate client matters. She stipulated that she neglected six client matters and committed a variety of other misconduct, including failing to appear at two scheduled hearings, failing to promptly render a full accounting of client funds in her possession, failing to take reasonably practicable steps to protect a client's interest upon the termination of her representation, and failing to refund unearned fees upon her withdrawal from employment. *Id.* at ¶ 7-8.

{¶ 30} As aggravating factors, McCray had prior discipline, engaged in a pattern of misconduct, committed multiple offenses, and failed to make restitution of $200 to one of her clients. *Id.* at ¶ 11. In mitigation, she lacked a dishonest or selfish motive and had a cooperative attitude toward the disciplinary proceedings. Most significantly, the board found that the majority of McCray's violations "occurred over a short time period when she was under severe stress due to the disappearance of her teenage daughter." *Id.* at ¶ 12. McCray described herself as being in a fog during that time. She also acknowledged that her fear and anxiety had had such a debilitating impact on her law practice that she eventually asked local judges to transfer some of her cases to other attorneys and stopped practicing law for a time. *Id.* In light of those significant mitigating factors, we agreed that a one-year conditionally stayed suspension was the appropriate sanction for McCray's misconduct. *Id.* at ¶ 16-17.

{¶ 31} The board here found that *McCray* was distinguishable in three important respects. First, McCray's misconduct occurred during a discrete period of time when she was going through a traumatic personal experience. In contrast, Barbera has offered no explanation for his misconduct except to claim that (1) his client did not notify him of hearing dates, (2) he did not receive notices that were purportedly sent to him by the court, (3) the Medina County clerk's office did not provide online access to the domestic relations court's docket, and (4) he did not want to annoy the clerk of courts by calling to inquire about the status of his cases.

{¶ 32} Secondly, McCray's prior disciplinary sanctions arose from continuing-legal-education and registration violations and were imposed in the aftermath of her daughter's disappearance. Barbera, on the other hand, has been disciplined for several client-trust-account violations and his failure to cooperate in the ensuing disciplinary investigation. Not only did he repeat the latter offense in this proceeding, he continued to engage in misconduct *while he was on*

*probation* for his prior offenses. And finally, while both McCray and Barbera missed hearings, both leaving a single client to represent themselves pro se, Barbera's absence contributed to his client serving a ten-day jail sentence for contempt of court.

{¶ 33} Having distinguished *McCray* on those grounds—and having recognized that Barbera had engaged in additional misconduct by filing an appeal for the sole purpose of delay—the board concluded that a fully stayed suspension was not appropriate in this case. We agree.

{¶ 34} We also note that in addition to *McCray*, the board considered several other cases in which we imposed two-year suspensions with and without partial conditional stays for similar rule violations.

{¶ 35} In *Columbus Bar Assn. v. Roseman*, 156 Ohio St.3d 485, 2019-Ohio-1850, 129 N.E.3d 422, the attorney failed to provide competent legal representation in a single case, failed to act with reasonable diligence, and failed to obtain his clients' consent before dismissing their lawsuit. *Id*. at ¶ 25. He also abandoned those clients after agreeing to settle one of their claims, destroyed their file without collecting or distributing the proceeds of that settlement, and failed to cooperate in the resulting disciplinary investigation. *Id.* at ¶ 25-26. Like Barbera, Roseman had previously been disciplined for similar misconduct, committed multiple offenses, and caused harm to vulnerable clients, but in contrast to Barbera, he presented no mitigating evidence. *Id.* at ¶ 19. We suspended Roseman from the practice of law for two years with no stay. *Id*. at ¶ 27.

{¶ 36} In *Disciplinary Counsel v. Walden*, 158 Ohio St.3d 528, 2019-Ohio-5287, 145 N.E.3d 291, the attorney neglected and failed to reasonably communicate with *three* clients, made false statements to the tribunal in one case, failed to cooperate in the resulting disciplinary investigations, and was found to have engaged in conduct that was prejudicial to the administration of justice. *Id.* at ¶ 2, 11. Although Walden and Barbera presented comparable aggravating and

mitigating factors, Walden's prior discipline consisted of a single-day attorney-registration suspension. We suspended Walden from the practice of law for two years with 18 months conditionally stayed. Because Walden testified that he had sought help for depression, we also conditioned his reinstatement on the completion of an Ohio Lawyers Assistance Program ("OLAP") evaluation and compliance with all resulting treatment recommendations. *Id.* at ¶ 16, 22.

{¶ 37} In *Disciplinary Counsel v. Engel*, 154 Ohio St.3d 209, 2018-Ohio-2988, 113 N.E.3d 481, the attorney, like Barbera, neglected and failed to reasonably communicate with a single client and failed to cooperate in the investigative stage of the disciplinary proceedings. He also failed to promptly refund his unearned fee. *Id.* at ¶ 6-8. He established the existence of two qualifying mental-health disorders in addition to the mitigating factors present in Barbera's case. *Id.* at ¶ 11. But in addition to committing multiple offenses and failing to cooperate in the disciplinary investigation, Engel had twice been disciplined for engaging in similar misconduct. *Id.*

{¶ 38} Over Engel's objection, we found that a brief actual suspension from the practice of law followed by a longer stayed suspension with OLAP and practice monitoring would best protect the public from harm and preserve the public's trust in the legal profession. We therefore suspended him from the practice of law for two years with 18 months conditionally stayed. *Id.* at ¶ 30-31.

{¶ 39} We acknowledge that none of these cases is an exact match for Barbera's misconduct or the aggravating and mitigating factors that are present in this case. But the circumstances here are closer to those in *Roseman*, *Walden*, and *Engel* than to those in *McCray*. Therefore, an actual suspension from the practice of law is warranted. Based on the foregoing, we agree with the board's assessment that an 18-month suspension with the final 12 months stayed on conditions recommended by the board is the appropriate sanction in this case.

**Conclusion**

{¶ 40} Accordingly, Richard Barbera is suspended from the practice of law in Ohio for 18 months, with the final 12 months stayed on the conditions that he make restitution of $900 to Dianna Zanglin within 90 days of the date of this order and engage in no further misconduct.  If Barbera violates any condition of the stay, the stay will be lifted and he will serve the full 18-month suspension. Costs are taxed to Barbera.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Adam P. Bessler, Assistant Disciplinary Counsel, for relator.

Reminger Co., L.P.A., and Ian D. Mitchell, for respondent.

_____